**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BONNIE MITCHELL, derivatively on behalf of Nominal Defendant BROADWIND ENERGY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAVID P. REILAND; CHARLES H. BEYNON; WILLIAM T. FEJES, JR.; TERENCE P. FOX; JAMES M. LINDSTROM; J. CAMERON DRECOLL; TONTINE CAPITAL PARTNERS, L.P.; TONTINE CAPITAL OVERSEAS MASTER FUND, L.P.; TONTINE PARTNERS, L.P.; TONTINE OVERSEAS FUND, LTD.; and TONTINE 25 OVERSEAS MASTER FUND, L.P., <br><br> Defendants, <br><br> - and - <br><br> BROADWIND ENERGY, INC., <br><br> Nominal Defendant. | Civil Action No. 11 C 1059 <br><br> Honorable Robert W. Gettleman |

[Additional caption on the next page]

**PLAINTIFF JEFFREY HOPF'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO (1) CONSOLIDATE RELATED ACTIONS; AND
(2) APPOINT LEAD PLAINTIFF, INTERIM LEAD COUNSEL,
AND LIAISON COUNSEL**

| | |
|---|---|
| MICHAEL FRIEDMAN, derivatively on behalf of Nominal Defendant BROADWIND ENERGY, INC., </br></br>      Plaintiff, </br></br>vs. </br></br>J. CAMERON DRECOLL; JAMES M. LINDSTROM; CHARLES H. BEYNON; WILLIAM T. FEJES, JR.; TERENCE P. FOX; DAVID P. REILAND; PETER C. DUPREY; TONTINE CAPITAL PARTNERS, L.P.; TONTINE CAPITAL OVERSEAS MASTER FUND, L.P.; TONTINE PARTNERS, L.P.; TONTINE OVERSEAS FUND, LTD.; and TONTINE 25 OVERSEAS MASTER FUND, L.P., </br></br>      Defendants, </br></br>    - and - </br></br>BROADWIND ENERGY, INC., </br></br>      Nominal Defendant. | Civil Action No. 11 C 1313 </br></br> Honorable Robert W. Gettleman |

[Additional caption on the next page]

| | | |
|---|---|---|
| JEFFREY HOPF, derivatively on behalf of Nominal Defendant BROADWIND ENERGY, INC., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| PETER C. DUPREY; DAVID P. REILAND; CHARLES H. BEYNON; WILLIAM T. FEJES, JR.; TERENCE P. FOX; JAMES M. LINDSTROM; J. CAMERON DRECOLL; TONTINE CAPITAL PARTNERS, L.P.; TONTINE CAPITAL OVERSEAS MASTER FUND, L.P.; TONTINE PARTNERS, L.P.; TONTINE OVERSEAS FUND, LTD.; and TONTINE 25 OVERSEAS MASTER FUND, L.P., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 11 C 1519<br><br>Honorable Robert W. Gettleman |
| Defendants, | ) ) | |
| - and - | ) ) | |
| BROADWIND ENERGY, INC., | ) ) | |
| Nominal Defendant. | ) | |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ......................................................................................... 3

    A. The *Hopf* Complaint ....................................................................................... 3

    B. The *Friedman* and *Mitchell* Complaints ...................................................... 4

III. ARGUMENT ............................................................................................................... 5

    A. *Hopf*, *Friedman*, And *Mitchell* Involve Similar Questions Of Law And Fact And Should Be Consolidated ........................................................ 5

    B. The Court Should Grant Hopf's Motion To Appoint Lead Plaintiff, Interim Lead Counsel, And Liaison Counsel ............................................... 6

        (1) Hopf Is Qualified To Serve As Lead Plaintiff Based On His Significant Shareholdings, Superior Pleadings And His Commitment To The Case .................................................................. 6

        (2) The Court Should Appoint Johnson Bottini As Interim Lead Counsel Based On Its Outstanding Performance In Prosecuting *Hopf*, Its Experience, And Its Commitment ............. 11

        (3) The Court Should Appoint The Law Offices Of Edward T. Joyce & Associates, PC As Liaison Counsel .................................. 13

IV. CONCLUSION ......................................................................................................... 13

**TABLE OF AUTHORITIES**

**Cases**

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) ...................................................................................................... 6

*Dollens v. Zionts*,
   Nos. 01 C 5931, 01 C 2826, 2001 U.S. Dist. LEXIS 19966, (N.D. Ill. Dec. 4, 2001) ... 5, 6

*Garza v. Belton*,
   No. 08 C 1387, 2010 U.S. Dist. LEXIS 85828 (N.D. Ill. August 13, 2010) ..................... 9

*Guaranty Nat'l Title Co. v. J.E.G. Assocs.*,
   101 F.3d 57 (7th Cir. 1996) ............................................................................................. 8

*Held v. Held*,
   137 F.3d 998 (7th Cir. 1998) ........................................................................................... 8

*Hirt v. U.S. Timberlands Serv. Co.*,
   C.A. Nos. 19575 *et al.*, 2002 Del. Ch. LEXIS 89 (Del. Ch. July 3, 2002) ....................... 7

*Ikerd v. Lapworth*,
   435 F.2d 197 (7th Cir. 1970) .......................................................................................... 5

*In re Comverse Tech., Inc. Derivative Litig.*,
   No. 06-CV-1849 (NGG)(RER),
   2006 U.S. Dist. LEXIS 88312 (E.D.N.Y. Dec. 5, 2006) .................................................. 6

*In re Comverse Tech., Inc. Derivative Litig.*,
   No. 06-CV-1849 (NGG)(RER),
   2006 U.S. Dist. LEXIS 88261 (E.D.N.Y. Dec. 6, 2006) .................................................. 8

*In re Foundry Networks, Inc. Derivative Litig.*,
   2007 U.S. Dist. LEXIS 13148 (N.D. Cal. 2007) ............................................................. 7

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
   No. 09 C 7666, MDL No. 2109, 2010 WL 1433316 (N.D. Ill. Apr. 7, 2010) ................... 11

*Millman v. Brinkley*,
   No. 03-cv-3831, 2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1, 2004) ......................... 9

*Palomares v. Second Fed. Sav. & Loan Assoc. of Chicago*,
   No. 10 C 6124, 2010 U.S. Dist. LEXIS 118990 (N.D. Ill. Nov. 9, 2010) ......................... 5

*Star Ins. Co. v. Risk Mktg. Group Inc.*,
  561 F.3d 656 (7th Cir. 2009) ................................................................................. 4

*Wright v. Krispy Kreme Doughnuts, Inc.*,
  232 F.R.D. 528 (M.D.N.C. 2005) .......................................................................... 8

**Rules**

Fed. R. Civ. P. 42 ................................................................................................... *passim*

Fed. R. Civ. P. 23 ...................................................................................................... 11, 12

Fed. R. Civ. P. 23.1 ...................................................................................................... 3, 6

**Treatises**

Manual For Complex Litigation (Fourth) § 10.22 (2004) ............................................ 11

I.  INTRODUCTION

On March 12, 2010, the price of Broadwind Energy, Inc. ("Broadwind" or the "Company") stock dropped $1.21 per share, or 21%. That day, Broadwind's shareholders learned what its officers and directors (collectively, "Defendants") had been concealing from them for a year:

(1) Broadwind stock was trading at artificially inflated prices because Defendants delayed recognizing over $82 million in impairment charges; and

(2) Broadwind's majority shareholder and its chief executive officer ("CEO") took advantage of the inflated stock price by selling over 7,500,000 Broadwind shares through a secondary public offering.

Defendants' concealment and other misconduct form the basis of three shareholder derivative actions assigned to this Court – *Hopf*, *Friedman*, and *Mitchell*.[1] To ensure efficient and orderly prosecution of these related derivative actions, Jeffrey Hopf, a sophisticated investor who has been investing in Broadwind for several years, seeks relief from this Court on three fronts.

First, the Court should consolidate *Hopf* with *Friedman* and *Mitchell* under Federal Rule of Civil Procedure 42(a) because consolidation will promote efficiency and judicial economy.

Second, the Court should appoint Hopf as Lead Plaintiff because he has a significantly greater stake in Broadwind – he owns 5,000 Broadwind shares – than plaintiffs in *Mitchell* and *Friedman*, Bonnie Mitchell and Michael Friedman. Furthermore, Hopf, with the assistance of his counsel, Johnson Bottini, LLP, has submitted pleadings that are superior to those in *Friedman* and *Mitchell*.

---

[1] These actions include: *Mitchell v. Reiland*, No. 11 C 1059; *Friedman v. Drecoll*, No. 11 C 1313; and *Hopf v. Duprey*, No. 11 C 1519.

1

Specifically, Hopf alleges a claim under the Securities Exchange Act of 1934 (the "Exchange Act"), in addition to common law claims for breaches of fiduciary duties, insider selling, unjust enrichment, and corporate waste. In contrast, the *Friedman* and *Mitchell* complaints both allege diversity jurisdiction and assert only common law claims for breaches of fiduciary duties. Worse, the *Mitchell* complaint's jurisdictional allegations are facially defective for failing to identify the state of citizenship of any party. Moreover, to demonstrate demand futility, Hopf alleges Broadwind's Audit Committee faces a substantial likelihood of liability for permitting the Defendants to delay the recognition of $82 million in impairment charges, while the *Friedman* and *Mitchell* complaints are silent in that regard. Finally, as Hopf states in his verified complaint, he has been investing in Broadwind since January 2009 and has continuously held 5,000 shares of Broadwind stock. By contrast, the plaintiffs in *Friedman* and *Mitchell* – Bonnie Mitchell and Michael Friedman – failed to allege when they first purchased their Broadwind shares. Mitchell's and Friedman's silence on this issue casts doubt as to whether they meet Federal Rule of Civil Procedure 23.1(b)'s requirement that, to have standing to sue, a derivative plaintiff must be a shareholder at the time when the underlying misconduct occurs. Hopf is therefore uniquely qualified to serve as Lead Plaintiff.

Third, the quality of Johnson Bottini's pleadings, together with its demonstrated success in litigating complex shareholder derivative actions, weighs in favor of its appointment as Interim Lead Counsel. And the Law Offices of Edward T. Joyce & Associates, PC, a well-established litigation boutique based in Chicago, should be appointed as Liaison Counsel in the consolidated case.

## II. STATEMENT OF FACTS

Pending before this Court are three shareholder derivative actions against Broadwind's officers and directors. In this statement of facts, Hopf provides an overview of these related actions.

### A. The *Hopf* Complaint

The *Hopf* complaint alleges that Defendants caused the Company to make false and misleading statements that artificially inflated the price of Broadwind stock. *See* Declaration of Albert Y. Chang ("Chang Decl.") Ex. A ¶¶ 30-51. Specifically, the Defendants breached their fiduciary duties by causing Broadwind to improperly delay the write-down of over $82 million in impairment charges. *Id.* ¶¶ 3, 92-96. Furthermore, Defendants issued false and misleading proxy materials, which form the basis of a proxy claim under § 14(a) of the Exchange Act. *Id.* ¶¶ 48, 90-91. Certain Broadwind insiders also engaged in insider trading. ¶¶ 4, 72-75. Based on these allegations, the *Hopf* complaint asserts seven counts, including the § 14(a) claim and common law claims for breaches of fiduciary duties, insider selling, unjust enrichment, and corporate waste. *Id.* ¶¶ 89-122.

Notably, the § 14(a) claim provides a basis for subject matter jurisdiction. And in his verified complaint, Hopf demonstrates his standing to prosecute a derivative action under Rule 23.1 by stating that he has owned 5,000 Broadwind shares since January 2009. Hopf's continuous holding of Broadwind stock secures his standing to prosecute this case.

B.     **The *Friedman* and *Mitchell* Complaints**

*Friedman* and *Mitchell* are similar to *Hopf* in three respects. First, these actions are brought against common officers, directors, and a majority shareholder. Second, these actions are derivative in nature. Third, these actions involve Defendants' failure to timely record the $82 million in impairment charges. These similarities give rise to substantial common questions of law and fact between *Hopf*, *Friedman*, and *Mitchell*.

Despite these similarities, *Friedman* and *Mitchell* differ from *Hopf* in terms of jurisdictional basis and the allegations regarding demand futility. *Friedman* and *Mitchell* do not include the federal claim under § 14(a) arising from Broadwind's issuance of false and misleading proxy materials. Thus, federal jurisdiction in *Friedman* and *Mitchell* is entirely predicated upon diversity. In contrast, the *Hopf* complaint asserts subject matter jurisdiction based on federal question. Chang Decl. Ex. A ¶ 9. Notably, the *Mitchell* complaint fails to adequately allege diversity. *Mitchell* does not specify the plaintiff's citizenship, depriving this Court of subject matter jurisdiction.

Further, the *Hopf* complaint contains fact-specific allegations about Defendants' liability, including allegations that the Audit Committee breached its fiduciary duty by allowing the Company to delay recognizing $82 million in impairment charges. *See id.* ¶ 85. These well-pled demand futility allegations are absent from the *Friedman* and *Mitchell* complaints.

4

### III.    ARGUMENT

**A.   *Hopf*, *Friedman*, And *Mitchell* Involve Similar Questions Of Law And Fact And Should Be Consolidated**

This Court has discretion under Federal Rule of Civil Procedure 42(a) to consolidate actions involving common questions of law or fact. *Star Ins. Co. v. Risk Mktg. Group Inc.*, 561 F.3d 656, 660 (7th Cir. 2009). Here, *Hopf*, *Friedman*, and *Mitchell* meet the requirements of Rule 42(a) because they share numerous common questions of law and fact, including:

- whether Defendants mismanaged Broadwind by causing it to improperly delay the recognition of an impairment charge of $82 million;

- whether Defendants devised a scheme to enable Broadwind's majority shareholder and its CEO to dispose of significant portions of their interests in the Company at artificially inflated prices; and

- how much Broadwind has suffered as a result of Defendants' breaches of fiduciary duties.

Resolution of these common questions will involve the same discovery, motion practice, and similar issues at trial. Consolidation is therefore appropriate. *See Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970) ("considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event"). Accordingly, absent any objections based on prejudice, the Court should consolidate *Hopf*, *Friedman*, and *Mitchell*. *See, e.g., Dollens v. Zionts,* Nos. 01 C 5931, 01 C 2826, 2001 U.S. Dist. LEXIS 19966, at *7 (N.D. Ill. Dec. 4, 2001) (Lefkow, J.) (consolidating shareholder derivative actions); *Palomares v. Second Fed. Sav. & Loan Assoc. of Chicago*, No. 10 C 6124, 2010 U.S. Dist. LEXIS 118990, at **8-9 (N.D. Ill. Nov. 9, 2010) (Coleman, J.) (consolidating cases for discovery purposes).

**B.     The Court Should Grant Hopf's Motion To Appoint Lead Plaintiff, Interim Lead Counsel, And Liaison Counsel**

**(1)     Hopf Is Qualified To Serve As Lead Plaintiff Based On His Significant Shareholdings, Superior Pleadings And His Commitment To The Case**

The Federal Rules of Civil Procedure and case law set forth the standards for the Court to appoint lead plaintiff. Central to the standards is Rule 23.1's requirement that a lead plaintiff "fairly and adequately represent the interests of shareholders . . . who are similarly situated in enforcing the right of the corporation." FED. R. CIV. P. 23.1(a). A plaintiff leading a shareholder-derivative action occupies a position "of a fiduciary character" and "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon [the lead plaintiff's] diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949). Accordingly, after consolidation of the related actions, this Court should select a lead plaintiff who is capable of diligently and responsibly discharging his or her fiduciary obligations.

To that end, although various factors may be considered, the Court should focus its consideration on three factors that other courts have consistently found applicable: (1) economic stake; (2) the quality of the pleadings; and (3) the commitment and ability in prosecuting the claims. *E.g.*, *Dollens*, 2001 U.S. Dist. LEXIS 19966, at **18-19 (comparing the respective holdings of competing movants for lead plaintiff appointment). As discussed below, consideration of these factors favors selecting Hopf as Lead Plaintiff.

6

### (i) Hopf owns 5,000 shares of Broadwind stock and thus has a significant interest in this case

As stated in Hopf's verified complaint and his declaration, he owns 5,000 shares of Broadwind stock. Chang Decl. Ex. A ¶ 11; Hopf Dec. ¶ 3. Shareholders' stockholding is an important factor in selecting a lead plaintiff in derivative actions. *See Dollens*, 2001 U.S. Dist. LEXIS 19966, at *18. In *In re Foundry Networks, Inc. Derivative Litigation*, for example, the court chose to appoint a lead plaintiff who held about four times the number of shares as the other party moving for lead plaintiff, in part because a higher financial stake in the litigation had "some relevance to the plaintiff's interest in a derivative action and the likelihood that the plaintiff will pursue the derivative claims vigorously." 2007 U.S. Dist. LEXIS 13148 at *5 (N.D. Cal. 2007) (Whyte, J.).

The same reasoning applies here. Mitchell and Friedman own only several hundred shares. Chang Decl. ¶ 6. Thus, Hopf is the long-term owner of nearly ten times the number of shares owned by Mitchell and Friedman. Given his significantly larger financial stake in the Company, Hopf is the plaintiff who is more likely to vigorously and effectively pursue the derivative claims on behalf of the Company and its shareholders. *See also Hirt v. U.S. Timberlands Serv. Co.*, C.A. Nos. 19575 *et al.*, 2002 Del. Ch. LEXIS 89, at *5 (Del. Ch. July 3, 2002) (stating that "the relative economic stakes of the competing litigants in the outcome of the lawsuit [should be] accorded great weight").[2] Accordingly, the Court should appoint Hopf as Lead Plaintiff.

---

[2] The court in *Hirt* also gave no weight on the fact that one action was commenced earlier than others. Nor should this Court. Thus, the Court should disregard the fact that Mitchell and Friedman filed their actions before Hopf.

7

### (ii) The quality of Hopf's pleadings is superior

Before filing his complaint, Hopf, with the assistance of his counsel, Johnson Bottini, LLP, conducted a diligent investigation into Defendants' wrongdoing. Declaration of Jeffrey Hopf ("Hopf Decl.") ¶ 4; Chang Decl. ¶ 7. The thorough investigation produced a comprehensive, fact-specific complaint that is superior to the complaints in *Friedman* and *Mitchell* in three important ways.

First, the *Hopf* complaint alleges that the directors violated § 14(a) of the Exchange Act by issuing materially false and misleading written statements to shareholders in the Company's April 1, 2010 Proxy. Chang Decl. Ex. A ¶¶ 48, 90-91. This federal claim under § 14(a) is as significant as its absence from the *Friedman* and *Mitchell* complaints is glaring. The § 14(a) claim is a very strong claim, and the failure of Mitchell's and Friedman's respective counsel to assert this claim does not place them in a favorable light for consideration as an adequate fiduciary for all derivative plaintiffs. Such failure undermines any claim that Mitchell and Friedman can adequately represent the interests of all derivative plaintiffs. *See*, *e.g.*, *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-CV-1849 (NGG)(RER), 2006 U.S. Dist. LEXIS 88261, at *11 (E.D.N.Y. Dec. 5, 2006) (Garaufis, J.) (choosing lead plaintiff based in part on the number of allegations contained in the complaint); *Wright v. Krispy Kreme Doughnuts, Inc.*, 232 F.R.D. 528, 530 (M.D.N.C. 2005) (Osteen, J.) (selecting lead plaintiff based on the superiority of litigation strategy).

Second, the *Mitchell* complaint completely fails to adequately allege diversity. *Mitchell* does not specify the citizenship of any party, depriving this Court of subject matter jurisdiction. *See Held v. Held*, 137 F.3d 998, 1000 (7th

8

Cir. 1998) (holding that failure to allege the parties' citizenship renders the diversity jurisdiction allegation defective). The *Mitchell* complaint is defective and subject to dismissal. *Guaranty Nat'l Title Co. v. J.E.G. Assocs.,* 101 F.3d 57 (7th Cir. 1996) (dismissing case *sua sponte* for lack of jurisdiction because plaintiff failed to allege citizenship). The failure of Mitchell's counsel to adequately allege diversity jurisdiction suggests that they will be unable to adequately address the many complex issues that will arise in this shareholder derivative action.

Third, Hopf's fact-specific allegations of demand futility are superior to those in the *Friedman* and *Mitchell* complaints. For example, Hopf includes nearly four full pages of demand futility allegations. Chang Decl. Ex. A ¶¶ 76-88. By contrast, *Mitchell* contains only two pages of demand futility allegations and the *Friedman* complaint contains a paltry half-page of demand futility allegations. *See* Chang Decl. Ex. B ¶¶ 65-68, Ex. C ¶¶ 57-65. Notably, Hopf alleges that Defendants Beynon, Fejes, and Reiland face a substantial likelihood of liability for abdicating their fiduciary duties as members of the Audit Committee and failing to properly account for the Company's massive $82 million in write-downs of goodwill and intangibles. Chang Decl. Ex. A ¶ 85. Both the *Friedman* and *Mitchell* complaints are missing these demand futility allegations. As a result, the *Hopf* complaint can better withstand a motion to dismiss based on demand futility than the *Friedman* and *Mitchell* complaints. *See Millman v. Brinkley*, No. 03-cv-3831, 2004 U.S. Dist. LEXIS 20113, at **8-9 (N.D. Ga. Oct. 1, 2004) (Duffey, J.) (selecting lead plaintiff based on quality of pleadings). The Court should therefore appoint Hopf as Lead Plaintiff.

9

### (iii) Hopf's long-term commitment to Broadwind makes him an ideal Lead Plaintiff

Hopf has been investing tens of thousands of dollars of personal assets in Broadwind for several years. Hopf Decl. ¶ 3. As Hopf states in his verified complaint and his declaration, he currently holds 5,000 Broadwind shares, which he first purchased in January 2009. *Id.* Hopf has been investing in the securities markets for decades and is a knowledgeable investor. *Id.* ¶ 4. Hopf spent a significant amount of time investigating Broadwind before making his investment. *Id.* Moreover, Hopf has been regularly communicating with his counsel and is willing and able to take on the responsibilities of lead plaintiff. *Id.* ¶¶ 5-10. Because Hopf is well qualified and is committed, the Court should appoint him as Lead Plaintiff. *See Millman*, 2004 U.S. Dist. LEXIS 20113, at *10 (choosing as lead plaintiff the investor who held the subject stock for a longer period).

In contrast to Hopf's clear statement about his standing to sue as a derivative plaintiff, Friedman and Mitchell do not identify in their complaints how many shares of Broadwind they own nor do they specify when they first purchased their shares. *See Garza v. Belton*, No. 08 C 1387, 2010 U.S. Dist. LEXIS 85828, at *30 (N.D. Ill. Aug. 13, 2010) (noting that it is "best practice" for derivative plaintiffs to specifically allege the dates of purchase and ownership of company stock). Since the wrongdoing alleged in all three complaints began in March 2009, it is critical that the Lead Plaintiff purchased shares before March 2009 and continuously held the shares. Hopf satisfies those requirements and has so verified in his complaint and declaration. *See* Chang Decl. Ex. A ¶ 11; Hopf

10

Decl. ¶ 3. Because both Friedman and Mitchell failed to include these critical allegations in their complaints, their pleadings are defective and cannot establish that they have standing as derivative plaintiffs. The Court should therefore select Hopf as Lead Plaintiff.[3]

### (2) The Court Should Appoint Johnson Bottini As Interim Lead Counsel Based On Its Outstanding Performance In Prosecuting *Hopf*, Its Experience, And Its Commitment

To achieve efficiency, the Court should appoint Interim Lead Counsel for plaintiffs in the consolidated action based on the consideration of Rule 23(g)(1)(A)'s four factors: counsel's work, experience, knowledge, and commitment. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.22 (2004); *see also In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, MDL No. 2109, 2010 WL 1433316, at *5 (N.D. Ill. Apr. 7, 2010) (Gottschall, J.).

Consideration of each of the factors weighs in favor of appointing Hopf's counsel, Johnson Bottini, as Interim Lead Counsel. First, as discussed above, Johnson Bottini has done superior work in bringing a complaint that (1) adequately alleges Hopf's standing to maintain this action; (2) includes a valuable and important federal claim; and (3) sets forth fact-specific allegations of demand futility.

Second, Johnson Bottini has extensive experience prosecuting securities and derivative cases. Prior to forming Johnson Bottini, Frank Bottini was a

---

[3] In deciding whether to select Hopf as Lead Plaintiff, the Court should disregard the fact that Mitchell and Friedman are jointly seeking appointment of Mitchell's counsel as lead counsel. In fact, Mitchell and Friedman have no choice but seek appointment of one lead counsel because they are represented by the same local counsel. Their local counsel would be faced with an irreconcilable conflict if it sought relief that preferred one client over another simultaneously represented client.

11

partner at Wolf Haldenstein Adler Freeman & Herz LLP, a large firm where he prosecuted numerous derivative cases similar to this one. Chang Decl. Ex. D at 9. Johnson Bottini has been retained not only by shareholders but also by publicly-traded corporations to pursue former directors for breaches of fiduciary duties in a number of matters, including one of the highest profile cases in the United States involving the backdating of stock options – *In re Brocade Systems Communications, Inc. Derivative Litigation*, No. 05cv41683 (N.D. Cal.). Chang Decl. Ex. D at 1. After five years of litigation, over $24 million was recovered for the Company. *Id.* Courts have also recognized that Johnson Bottini has the experience to handle complex derivative matters, stating, for example, that the firm is "exceptionally qualified and experienced." *See id.* ¶ 11; Ex. E at 3-6.

Third, attorneys at Johnson Bottini are experienced in litigating in Illinois. Chang Decl. ¶ 13. Johnson Bottini is currently involved in another high-stakes shareholder derivative action against Motorola Inc.'s officers and directors in Illinois state court. *Id.* Mr. Bottini's associate, Albert Y. Chang, previously served as a judicial law clerk in this District for the Honorable Suzanne B. Conlon. *Id.*

Fourth, Johnson Bottini is also willing and able to commit all necessary resources and prosecute the derivative claims on Hopf's behalf. *Id.* ¶ 14. Thus, all four factors under Rule 23(g)(1)(A) weigh in favor of appointing Johnson Bottini as Interim Lead Counsel.

12

**(3) The Court Should Appoint The Law Offices Of Edward T. Joyce & Associates, PC As Liaison Counsel**

As demonstrated in its firm resume (Chang Decl. Ex. E), the Law Offices of Edward T. Joyce & Associates, PC is a well-established litigation boutique located in Chicago, Illinois. Attorneys at the Law Offices of Edward T. Joyce & Associates, PC are as skilled in litigating complex cases as they are experienced in litigating in this District. Accordingly, the Court should appoint the Law Offices of Edward T. Joyce & Associates as Liaison Counsel.

## IV. CONCLUSION

For the reasons set forth above, the Court should grant Hopf's motion in its entirety.

Dated: April 22, 2011

JOHNSON BOTTINI, LLP
Francis A. Bottini, Jr.
Albert Y. Chang

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.

501 West Broadway, Suite 1720
San Diego, California 92101
Telephone: (619) 230-0063
Facsimile: (619) 238-0622

THE LAW OFFICES OF EDWARD T. JOYCE
 & ASSOCIATES, PC
Edward T. Joyce
Rowena T. Parma
135 South La Salle Street, Suite 2200
Chicago, Illinois 60603
Telephone: (312) 641-2600
Facsimile: (312) 641-0360

*Counsel for Plaintiff Jeffrey Hopf*

13

**CERTIFICATE OF SERVICE**

I certify that on April 22, 2011, I caused a copy of the foregoing Memorandum of Law, the Declaration of Albert Y. Chang with exhibits, and the Declaration of Jeffrey Hopf to be served via the Court's electronic filing system on all counsel of record in this action.

Dated: April 22, 2011

s/ Francis A. Bottini, Jr.<br>Francis A. Bottini, Jr.