### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BONNIE MITCHELL, Derivatively on Behalf of Nominal Defendant BROADWIND ENERGY, INC., | |
| Plaintiff, | **Case No. 11-CV-01059** |
| v. | |
| DAVID P. REILAND, *et al.*, | |
| Defendants, | |
| and | |
| BROADWIND ENERGY, INC., | |
| Nominal Defendant. | |
| MICHAEL FRIEDMAN, Derivatively on Behalf of Nominal Defendant BROADWIND ENERGY, INC., | |
| Plaintiff, | **Case No. 11-CV-01313** |
| v. | |
| J. CAMERON DRECOLL, *et al.*, | |
| Defendants, | |
| and | |
| BROADWIND ENERGY, INC., | |
| Nominal Defendant. | |

JEFFREY HOPF, Derivatively on Behalf of
Nominal Defendant BROADWIND ENERGY,
INC.,

                Plaintiff,

     v.

PETER C. DUPREY, *et al.*,

                Defendants,

     and

BROADWIND ENERGY, INC.,

                Nominal Defendant.

**Case No. 11-CV-01519**

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION BY
PLAINTIFFS BONNIE MITCHELL AND MICHAEL FRIEDMAN TO
CONSOLIDATE RELATED DERIVATIVE ACTIONS AND TO
APPOINT CO-LEAD PLAINTIFFS AND LEAD AND LIAISON COUNSEL**

## TABLE OF CONTENTS

                                                                                                    Page

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ........................................................................................ 3

III.    ARGUMENT .............................................................................................. 4

        A.      Consolidation of the Related Derivative Actions Is Proper Under
                Federal Rule of Civil Procedure 42(a) ......................................... 4

        B.      Ms. Mitchell and Mr. Friedman Should Be Appointed as Co-Lead
                Plaintiffs ....................................................................................... 6

                1.      Ms. Mitchell and Her Counsel Are the Proven Leaders
                        of This Litigation ............................................................... 7

                2.      Ms. Mitchell Has Filed High a Quality Pleading Based Upon Her
                        Counsel's Extensive Investigation ..................................... 9

                3.      The Largest Financial Interest Factor is a Non-Factor ............ 12

        C.      The Court Should Appoint BTKMC as Lead Counsel and
                Lasky & Rifkind as Liaison Counsel ............................................ 13

IV.     CONCLUSION ........................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bender v. Parks*,
No. 03-2485 (RMC), 2004 U.S. Dist. LEXIS 17090 (D.D.C. Jan. 15, 2004) ..........................2

*BP Prods. N. Am., Inc. v. Bulk Petro. Corp.*,
No. 07-C-1085, 2008 U.S. Dist. LEXIS 69531 (E.D. Wis. Aug. 27, 2008) ............................4

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) .........................................................................................12

*Dollens v. Zionts*,
No. 01 C 5921, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) ........................ passim

*In re Comverse Tech. Inc., Derivative Litig.*,
No. 06-1849, Order (E.D.N.Y. Sept. 22, 2006) .......................................................12

*In re Comverse Tech., Inc. Derivative Litig.*,
No. 601272106, Order and Final Judgment
(E.D.N.Y. July 1, 2010) ...........................................................................................14

*In re Juniper Derivative Actions*,
No. 06-cv-03396, Order and Final Judgment
(N.D. Cal. Nov. 13, 2008) ........................................................................................14

*In re McAfee, Inc. Derivative Litig.*,
No. 06-cv-03484, Final Judgment and Order of Dismissal With Prejudice
(N.D. Cal. Feb. 2, 2009) ...........................................................................................14

*In re Microstrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) ........................................................................5

*Midwest Cmty. Council v. Chicago Park Dist.*,
98 F.R.D. 491 (N.D. Ill. 1983) ...................................................................................4

*Millman v. Brinkley*,
No. 1:03-cv-3831, 2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1, 2004) ...............5, 6, 8, 13

*Oberly v. Kirby*,
592 A.2d 445 (Del. 1991) ...........................................................................................7

*Sweet v. Bermingham*,
65 F.R.D. 551 (S.D.N.Y. 1975) ................................................................................3, 9

*United States v. Knauer*,
   149 F.2d 519 (7th Cir. 1945) ........................................................................................4

*Weisz v. Calpine Corp.*,
   No. 4:02-cv-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002)...........................................5

**RULES**

Federal Rule of Civil Procedure 42(a) ...................................................................................1, 4

Plaintiffs Bonnie Mitchell ("Ms. Mitchell") and Michael Friedman ("Mr. Friedman") respectfully submit this Memorandum in support of their motion to: (i) consolidate the related shareholder derivative actions described herein pursuant to Federal Rule of Civil Procedure 42(a); (ii) appoint plaintiffs Ms. Mitchell and Mr. Friedman as Co-Lead Plaintiffs; and (iii) appoint the law firm of Barroway Topaz Kessler Meltzer & Check, LLP ("BTKMC") as Lead Counsel and Lasky & Rifkind, Ltd. ("Lasky & Rifkind") as Liaison Counsel.

## I.     INTRODUCTION

On February 15, 2011, Ms. Mitchell commenced the above-captioned shareholder action (the *Mitchell* Action) derivatively on behalf of nominal defendant Broadwind Energy, Inc. ("Broadwind" or the "Company") seeking redress for the breaches of fiduciary duties of certain current and former Broadwind directors and officers and its controlling shareholder, whose self-dealing and waste of Company assets in connection with a secondary public offering of Broadwind stock has substantially harmed Broadwind.    Thereafter two similar shareholder derivative actions were subsequently filed in this Court alleging similar factual allegations and claims as the *Mitchell* Action.[1] As discussed herein, consolidation of the related derivative actions is entirely appropriate under Rule 42(a) of the Federal Rules of Civil Procedure, as all three actions involve common questions of law and fact, and the consolidation of these actions will avoid unnecessary costs and delay for all parties. *See* Fed. R. Civ. P. 42(a).

After consolidation of the derivative actions, this Court should appoint a leadership structure to ensure that the action is prosecuted efficiently and effectively. "[P]ursuant to Fed. R. Civ. P. 23.1, a plaintiff bringing a derivative shareholder action must be qualified to serve in a fiduciary capacity as a representative of the class of stockholders, whose interest is dependent

---

[1] On February 24, 2011, Mr. Friedman instituted a shareholder derivative action, captioned *Friedman v. Drecoll*, et al., No. 11-cv-01313 (the "*Friedman* Action"); and on March 3, 2011, Jeffrey Hopf filed an action captioned *Hopf v. Duprey, et al.*, No. 11-cv-01519 (the "*Hopf* Action").

upon the representative's adequate and fair prosecution of the action." *Bender v. Parks*, No. 03-2485 (RMC), 2004 U.S. Dist. LEXIS 17090, at *11 (D.D.C. Jan. 15, 2004) (citation omitted).

Here, two of the three plaintiffs, Ms. Mitchell and Mr. Friedman, and their counsel have shown a willingness to act in the best interests of Broadwind by coming to an agreement as to an appropriate leadership structure to lead this derivative action on behalf of Broadwind as they both agree that Ms. Mitchell and Mr. Friedman should be appointed as Co-Lead Plaintiffs and BTKMC and Lasky & Rifkind should be appointed as Lead and Liaison Counsel. The appointment of Ms. Mitchell and Mr. Friedman as Co-Lead Plaintiffs and BTKMC as Lead Counsel is in accordance with the factors that this Court should consider in its decision to appoint a leadership structure as they have: (1) been the most vigorous in their prosecution of the Action; (2) filed high quality original pleadings; and (3) selected highly qualified counsel, BTKMC, to act as Lead Counsel. *Dollens v. Zionts*, No. 01 C 5921, 2001 U.S. Dist. LEXIS 19966, at *6 (N.D. Ill. Dec. 4, 2001) (appointing the "leaders of the litigation," based on the quality of their pleadings and the vigor with which they pursued their claims.).

The only remaining plaintiff, Hopf, does agree to this structure and seeks his appointment as sole lead plaintiff. However, Hopf and his counsel are not the most adequate movants as Hopf, the plaintiff who was last to file a complaint on behalf of Broadwind, has not filed an original pleading as the entire "Substantive Allegations" section of his complaint was copied nearly wholesale from the class action complaint also pending in this District. Most importantly, the inclusion of Hopf as a plaintiff in the consolidated action would potentially cause this Court to lose jurisdiction over the matter as he would destroy the diversity of citizenship between the plaintiffs and defendants. Thus, for all the reasons stated herein, the record clearly reflects that Ms. Mitchell and Mr. Friedman and Ms. Mitchell's counsel, BTKMC, are most capable of

"act[ing] in the stead of the corporation, as a corporate surrogate seeking vindication of a corporate right" as Ms. Mitchell and Mr. Friedman and BTKMC have ensured, and will continue to ensure, that defendants are held accountable for their improper conduct. *Sweet v. Bermingham*, 65 F.R.D. 551, 553 (S.D.N.Y. 1975).

## II.  **BACKGROUND**

Broadwind is a Delaware corporation that manufactures wind energy products, such as structural towers and gearing systems for wind turbines, and provides technical, engineering and logistics management services to the United States wind energy industry.[2] The above-captioned Action, brought on behalf of nominal defendant Broadwind against certain current and former directors and executive officers and Broadwind's controlling shareholder, alleges that the defendants wrongfully caused and allowed the Company to undertake a secondary public offering of Broadwind stock on January 21, 2010 (the "Offering"). The Offering was against the Company's best interests, having been designed and executed on terms that were not entirely fair to the Company.  Indeed, the Offering occurred solely for the benefit of the Company's controlling shareholder and former Chief Executive Officer ("CEO"), who unfairly and unjustly received millions of dollars in illicit proceeds from the Offering.[3]

The first-filed complaint, the *Mitchell* Action, was filed on or around February 15, 2011 and assigned to the Honorable Robert W. Gettleman. The second-filed complaint, the *Friedman* Action, was filed on or around February 24, 2011 and assigned to the Honorable Edmond E. Chang.  The third-filed complaint, the *Hopf* Action, was filed on or around March 3, 2011 and assigned to the Honorable Joan Humphrey Lefkow.[4]  On April 11, 2011, in recognition that these derivative actions arise out of the same transactions and occurrences and involve the same (or

---

[2] *See Mitchell* Complaint, ECF No. 1, at ¶ 7.
[3] *See id.* at ¶ 2.
[4] The *Mitchell, Friedman* and *Hopf* Actions are collectively referred to herein as the Related Derivative Actions.

substantially similar) issues of fact and law, after meeting and conferring with all of the parties, Ms. Mitchell filed an unopposed motion to reassign the Related Derivative Actions, so that this Court could effectively and efficiently adjudicate all three derivative actions. (*See* Unopposed Motion to Reassign Related Derivative Actions, ECF No. 32.) On April 21, 2011, this Court held a hearing to consider the Unopposed Motion to Reassign Related Derivative Actions and determined that the reassignment of the related matters as requested was appropriate.

## III.  ARGUMENT

### A.  Consolidation of the Related Derivative Actions Is Proper Under Federal Rule of Civil Procedure 42(a)

Federal Rule of Civil Procedure 42(a) provides that when actions involve "a common question of law of fact," the Court may "join for hearing or trial any or all matters at issue in the actions; consolidate the actions;" and "issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "A court has discretion to consolidate related cases, which involve common questions of fact and law under Fed. R. Civ. P. 42(a), 'under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event.'" *Dollens*, 2001 U.S. Dist. LEXIS 19966, at *6; *Midwest Cmty. Council v. Chicago Park Dist.*, 98 F.R.D. 491, 499 (N.D. Ill. 1983) ("[i]f two cases appear to this Court to be of like nature and relative to the same question, if a joint trial of them would avoid unnecessary costs and delay, and it is reasonable to try them together, it is within this Court's discretionary power to order consolidation."); *see also United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945) (Rule 42(a) was "designed and intended to encourage such consolidation where possible"); *BP Prods. N. Am., Inc. v. Bulk Petro. Corp.*, No. 07-C-1085, 2008 U.S. Dist. LEXIS 69531, at *13 (E.D. Wis. Aug. 27, 2008) ("Consolidation is preferred to avoid unnecessary duplication of efforts in related cases and promote judicial economy and

-4-

efficiency."). Consolidation of derivative actions is "particularly appropriate" since "the 'cost of defending [] multiple actions may well do serious harm to the very corporation in whose interest they are supposedly brought.'" *Millman v. Brinkley*, No. 1:03-cv-3831, 2004 U.S. Dist. LEXIS 20113, **6-7 (N.D. Ga. Oct. 1, 2004) (internal citation omitted).

Here, consolidation of the Related Derivative Actions is appropriate under Rule 42(a) because each action involves common questions of law and fact, and consolidation would avoid unnecessary costs and delay in adjudicating the Company's right to relief. All three actions seek, among other things, to recover for the Company the amount of damages it sustained as a result of the Defendants' alleged misconduct and disgorgement of the proceeds of the Offering. Given these common questions, the nearly identical nature of the claims at issue, the overlapping areas of discovery the parties will need to undertake, and the plaintiffs' shared interest in adjudicating the Company's right to relief, consolidation of the Related Derivative Actions is entirely appropriate.

Further, while some differences exist among the Related Derivative Actions, with regard to the individually named defendants[5] and the exact claims being pursued by the plaintiffs,[6] these differences should not defeat consolidation, since the central factual allegations underlying each action are the same. *See In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) (noting that, while the actions contained different claims, class periods and parties, "none of these minor differences detract from the overwhelming factual and legal similarities among the cases."); *Weisz v. Calpine Corp.*, No. 4:02-cv-1200, 2002 WL 32818827, at *3 (N.D. Cal.

---

[5] Both the *Friedman* Action and the *Hopf* Action name Peter C. Duprey, the current CEO of Broadwind and current member of the Board, as a named defendant in the matter, while the *Mitchell* Action did not.

[6] In addition to the claims raised in the *Mitchell* Action and the *Friedman* Action, Count I of the *Hopf* Action sets out a claim alleging that defendants caused the Company to issue misleading proxy statements in violation of Section 14(a) of the Securities and Exchange Act. (*See Hopf* Complaint at ¶¶ 89-91.)

Aug. 19, 2002) (consolidating cases despite "some differences and unique issues" where the underlying factual issues were identical). Thus, consolidation here is entirely appropriate.

### B. Ms. Mitchell and Mr. Friedman Should Be Appointed as Co-Lead Plaintiffs

When considering the appointment of lead plaintiffs and lead counsel in shareholder derivative actions, courts seek to determine which shareholder(s) and counsel will adequately serve the interests of the derivative plaintiffs and the nominal defendant. *See Dollens*, 2001 U.S. Dist. LEXIS 19966, at **13-21. Courts across the country, including this Court, consider the following factors when making a lead plaintiff determination: (1) the vigorousness of prosecution of the lawsuits; (2) the priority in instituting the suit; (3) the quality of the plaintiff's pleadings; (4) whether plaintiffs are represented by capable counsel; (5) whether any plaintiff is an institutional investor;[7] and (6) which plaintiff has the largest financial interest. *See Millman*, 2004 U.S. Dist. LEXIS 20113, at **9-11; *Dollens*, 2001 U.S. Dist. LEXIS 19966, at **13-19. None of these factors are dispositive, in and of themselves. Indeed, in *Dollens*, this Court appointed two individuals as co-lead plaintiffs, even though they did not have the largest financial interest and were not institutional investors. Rather, after weighing the factors set out above, this Court selected the plaintiffs it found to be the "leaders of the litigation," based on the quality of their pleadings and the vigor with which they pursued their claims. *Id.* at *20. Here, based upon an analysis of the afore-mentioned factors, the Court should appoint Ms. Mitchell and Mr. Friedman as Co-Lead Plaintiffs and Ms. Mitchell's counsel, BTKMC, as Lead Counsel and Lasky & Rifkind as Liaison Counsel.

---

[7] None of the plaintiffs are institutional investors, therefore, this factor is not applicable to the Court's analysis.

### 1. Ms. Mitchell and Her Counsel Are the Proven Leaders of This Litigation

Here, plaintiffs Ms. Mitchell and Mr. Friedman should be appointed Co-Lead Plaintiffs, as Ms. Mitchell and her counsel, BTKMC, have proven to be "leaders of the litigation," having exhibited that they are best positioned to lead this litigation by vigorously advancing the course of this litigation as much as possible at this stage and having expended significant resources thus far on behalf of the Company in connection with the vigorous prosecution of this action on behalf of Broadwind. Indeed, although the *Mitchell* Action was coincidentally filed a couple of days after a class action complaint was also filed in this Court captioned *Brasher v. Broadwind Energy Inc., et al.,* 1:11-cv-00991 (N.D. Ill.) (the "Class Action"), which alleges some similar underlying facts as the *Mitchell* Action, Ms. Mitchell's counsel had begun an investigation of the defendants' wrongdoing *months* before the first Class Action was filed. The investigation included a detailed factual investigation of defendants' misconduct in connection with the Offering as well as researching all potential claims and causes of actions which could be brought on behalf of Broadwind. It is clear from an examination of Ms. Mitchell's complaint that it is entirely different than the facts and claims alleged in the Class Action as Ms. Mitchell's complaint focuses on the Offering and whether the Offering, a self-dealing transaction, meets the high standard of "entire fairness" under Delaware law as the burden falls on the defendants to establish that the Offering meets such a high standard. *See Oberly v. Kirby*, 592 A.2d 445, 466 (Del. 1991) ("When a challenge to fairness is raised, the directors carry the burden of 'establishing . . . [the transaction's] entire fairness, sufficient to pass the test of careful scrutiny by the courts.'").

In stark contrast, the *Hopf* Action (which was filed approximately two weeks after the *Mitchell* Action), appears to have copied nearly all of the "Substantive Allegations" of the Class

Action complaint and, only in passing, mentions the entire fairness standard. (*See also* Section III.B.2 herein, discussing the similarity of the *Hopf* Action to the Class Action.) Thus, while some courts find that the first to file suit is not dispositive, it is certainly a significant factor to consider when selecting a derivative lead plaintiff, especially based upon the facts here, as it exhibits behavior of a shareholder interested in vigorously prosecuting the claims against defendants. *See Millman*, 2004 U.S. Dist. LEXIS 20113, at *9 (appointing plaintiff who filed first complaint as lead plaintiff); *Dollens*, 2001 U.S. Dist. LEXIS 19966, at **19-20 (same).

Furthermore, since the initiation of the *Mitchell* Action, Ms. Mitchell and her counsel have taken the lead to progress and streamline the litigation, including attempting to come to an agreement with the other plaintiffs and their counsel as to an appropriate leadership structure to prosecute the Related Derivative Actions. For example, Ms. Mitchell has effectuated service of her complaint on all defendants, including those who reside in the Caymen Islands which necessitated incurring the expense of hiring a process server to serve those defendants who reside outside of the United States. Ms. Mitchell and her counsel also have been coordinating with defendants on a regular basis to streamline the litigation, including meeting and conferring with all parties and then drafting and filing the Unopposed Motion to Reassign Related Derivative Actions in order to ensure that the Related Derivative Actions were transferred before this Court so that Ms. Mitchell and her counsel could file appropriate papers to then consolidate the Related Derivative Actions and move the Court to appoint a leadership structure.

Last, Ms. Mitchell's counsel successfully reached an agreement with counsel for Mr. Friedman with regard to a leadership structure to prosecute the consolidated derivative action as Mr. Friedman's counsel supports the appointment of Ms. Mitchell and Mr. Friedman as Co-Lead Plaintiffs and the appointment of BTKMC and the Lasky & Rifkind firm as Lead Counsel and

Liaison Counsel. Ms. Mitchell and Mr. Friedman are the most adequate Broadwind shareholders to prosecute the derivative claims on behalf of Broadwind as they both have proper standing to prosecute this action, having been continuous shareholders of Broadwind since the wrongdoing, and their appointment as Co-Lead Plaintiffs will ensure that this Court continues to have jurisdiction over the parties as both plaintiffs meet the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[8] Hopf, however, does not meet the requirements for diversity under 28 U.S.C. § 1332(a)(1) as Hopf and defendant Terence P. Fox are both citizens of the State of Wisconsin. Thus, if this Court does not sustain Hopf's federal claim, which is the sole basis granting this Court jurisdiction over the *Hopf* Action, the inclusion of Hopf as a plaintiff in the consolidated action could potentially cause this Court to lose jurisdiction over the consolidated action and would jeopardize the prosecution of the derivative action on behalf of Broadwind, the true plaintiff in interest. Therefore, by moving to be appointed as lead plaintiff in light of this serious deficiency, Hopf and his counsel have put their own interests before those of the Company, which certainly militates against the appointment of Hopf and his counsel to lead this litigation. Rather, it is clear that the appointment of fiduciaries, such as Ms. Mitchell and Mr. Friedman, who are required to "act[] in the stead of the corporation, as a corporate surrogate seeking vindication of a corporate right" will ensure that the defendants are held accountable for their misconduct and will not put their own interests before those of the Company. *Sweet*, 65 F.R.D. at 553.

   2.   **Ms. Mitchell Has Filed High a Quality Pleading Based Upon Her Counsel's Extensive Investigation**

---

[8] Ms. Mitchell is a citizen of the State of Arizona (*see* Civil Cover sheet filed with the *Mitchell* Action, ECF No. 2) and Mr. Friedman is a citizen of the State of New York (*see Friedman* complaint at ¶ 13 ). None of the defendants are citizens of either Arizona or New York.

As discussed *infra*, Ms. Mitchell's complaint is of the highest quality and was filed after her counsel conducted an extensive several month-long investigation into the facts and claims alleged in the *Mitchell* Action on behalf of Broadwind. The *Mitchell* Action alleges straightforward factual allegations and causes of action related to defendants' breaches of fiduciary duties and other violations of Delaware law as they relate to the Offering and focuses on the entire fairness of the transaction, or lack thereof, to Broadwind.[9] The *Hopf* Action, however, does not appear to be an original filing, and, instead copies wholesale paragraphs of the Class Action complaint. Specifically, the *Hopf* Action copied 26 of the 28 paragraphs of its "Substantive Allegations" directly from the Class Action complaint. Indeed, the paragraphs are substantively identical, with the exception of minor changes in wording to allege that the Board members and officers named as individual defendants in the *Hopf* Action directed the actions of the Company – *e.g.*, rather than saying "the company issued a press release" the Hopf Action alleges "the Individual Defendants caused the company to issue a press release." In other words, the "Substantive Allegations" of the *Hopf* Action contained only two original paragraphs as demonstrated in the chart below:

| Hopf Complaint | Class Action Complaint | Comparison |
|---|---|---|
| ¶ 24 | ¶ 25 | Identical |
| ¶ 26 | ¶ 26 | Identical |
| ¶ 27 | ¶ 27 | Identical, except for the substitution of the phrase "Relevant Period" for the phrase "Class Period" |
| ¶ 28 | ¶ 28 | Identical |
| ¶ 29 | ¶ 29 | Identical |

---

[9] The *Mitchell* Action inadvertently failed to allege the citizenships of the parties, however, this will be cured in the consolidated complaint as this Court does have proper jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a)(1). (*See also* Section III.B.1 herein.)

| Hopf Complaint | Class Action Complaint | Comparison |
|---|---|---|
| ¶ 30 | ¶ 30 | Identical, except for the elimination of references to the "Class Period" and minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 31 | ¶ 31 | Identical |
| ¶ 32 | ¶ 32 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 33 | ¶ 33 | Identical |
| ¶ 34 | ¶ 34 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 35 | ¶ 35 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 36 | ¶ 36 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 37 | ¶ 37 | Identical, except for eliminating the words "or about" and correcting the name of the SEC form described therein |
| ¶ 38 | ¶ 38 | Identical, except for eliminating the words "or about" |
| ¶ 39 | ¶ 39 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 40 | ¶ 40 | Identical |
| ¶ 41 | ¶ 41 | Identical |
| ¶ 42 | ¶ 42 | Identical, except for a typographical error in the *Hopf* Complaint |
| ¶ 43 | ¶ 43 | Identical |
| ¶ 44 | ¶ 44 | Identical, except for the elimination of internal references to preceding paragraphs in the Class Action Complaint, minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint committed the wrongdoing alleged therein, and the elimination of the allegation that Broadwind's financial statements were false and misleading because they did not comply with GAAP |
| ¶ 45 | ¶ 45 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 46 | ¶ 46 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to file the SEC Form 10-K described therein |
| ¶ 47 | ¶ 47 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint perpetrated the wrongdoing described therein |

| *Hopf* Complaint | Class Action Complaint | Comparison |
|---|---|---|
| ¶ 49 | ¶ 48 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 50 | ¶ 49 | Identical, except for minor changes in wording to allege that the "Individual Defendants" named in the *Hopf* Complaint caused Broadwind to issue the press release described therein |
| ¶ 51 | ¶ 50 | Identical |

This fact alone weighs against the appointment of Hopf and his counsel to lead this litigation. *See Dollens* 2001 U.S. Dist. LEXIS 19966, at *21 (refusing to appoint plaintiff as lead plaintiff who had copied another pleading).

While Hopf will tout his inclusion of a federal claim as evidence of his complaint's purported superiority, the correct standard is the quality of pleadings, not the quantity of verbiage. *See Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (holding that allegations in a complaint which are "simple, concise and direct" are preferable to a "prolix complaint larded with conclusory language"). Therefore, any parochial view of litigation advanced by Hopf and his counsel which criticizes Ms. Mitchell and her counsel for not filing as many claims as Hopf is a red herring designed to mask his complacency. Again, all claims arise out of the same course of conduct, and any difference in "tactics", *e.g.* asserting different claims can be remedied at a later juncture by the filing of an amended pleading, if necessary. *See In re Comverse Tech. Inc., Derivative Litig.* No. 06-1849, Order at 9 (E.D.N.Y. Sept. 22, 2006) (Reyes, J.) (finding differences in claims asserted as a non-factor in the appointment leadership structurel). (Attached as Exhibit 1 to Winchester Decl.).

### 3.    The Largest Financial Interest Factor is a Non-Factor

As the Court reasoned in *Dollens*, while the Court should consider the relative share ownership of the plaintiffs in its analysis, this factor alone is not determinative of the

appointment of a lead plaintiff. *See Dollens* 2001 U.S. Dist. LEXIS 19966, at *21 (appointing lead plaintiff who did not have largest financial interest as lead plaintiff). Here, the differences among the number of shares held by each of the plaintiffs is *de minimus* as Ms. Mitchell currently owns 452 shares, Mr. Friedman holds 300 shares and Hopf allegedly holds 5000 shares of Broadwind stock.[10] Furthermore, to the extent that this Court considers this factor relevant (especially in light of the analysis of the previous factors), since the commencement of the *Mitchell* Action, BTKMC was retained by another Broadwind shareholder, Mr. Anthony Burgarino, who currently holds 4000 shares of Broadwind stock and has held Broadwind stock continuously since the wrongdoing and will also be included as a plaintiff in a consolidated complaint. *See* Winchester Decl. at 4. Accordingly, the "largest-financial interest" factor is a non-factor.

**C.     The Court Should Appoint BTKMC as Lead Counsel and Lasky & Rifkind as Liaison Counsel**

The last factor for the Court to consider in the appointment of a lead plaintiff is whether the plaintiffs are represented by capable counsel. Furthermore, in selecting lead counsel, the "guiding principle" is who will "best serve the interest of the plaintiffs." *Millman*, 2004 U.S. Dist. LEXIS 20113, at *9. The criteria for selecting lead counsel include factors such as "experience and prior success record, the number, size, and extent of involvement of represented litigants, the advanced stage of proceedings in a particular suit, and the nature of the causes of action alleged." *Id.* (citations omitted). Each of these factors weighs in favor of appointing BTKMC as Lead Counsel and Lasky & Rifkind as Liaison Counsel.

BTKMC is a Martindale Hubbell "AV" rated law firm which has focused its practice on shareholder litigation over the past 24 years. With more than 80 attorneys specializing in

---

[10] *See* Declaration of Robin Winchester at 3 ("Winchester Decl."); see Declaration of Kip Shuman at 3.

complex shareholder litigation and with offices in San Francisco, California and Radnor, Pennsylvania, BTKMC has served as Lead or Co-Lead Counsel in numerous securities and complex litigation matters, including serving as Lead or Co-Lead Counsel in hundreds of shareholder derivative actions in state and federal courts across the country. *See* BTKMC firm resume, attached as Exhibit 2 to Winchester Decl.

By way of example of BTKMC's commitment to shareholders, BTKMC was at the forefront of litigation concerning the alleged backdating of stock options. Through over one hundred shareholder derivative actions filed in state and federal courts across the country, BTKMC initiated an extensive campaign against options backdating, seeking not only to hold the directors and officers responsible for their past misconduct, but also to ensure that proper corporate governance reforms were instituted so that these practices are finally eliminated. For example, BTKMC served as lead or co-lead counsel in several of the most notable options backdating derivative actions and, in connection with the settlement of those actions, recovered tens of millions of dollars in financial benefits for those companies, including those brought on behalf of: McAfee, Inc. (*In re McAfee, Inc. Derivative Litig.*, No. 06-cv-03484, Final Judgment and Order of Dismissal With Prejudice (N.D. Cal. Feb. 2, 2009) (BTKMC achieved a settlement in which McAfee received financial benefits valued at approximately $30 million as well as even more valuable industry-leading corporate governance reforms)); Juniper Networks, Inc. (*In re Juniper Derivative Actions*, No. 06-cv-03396, Order and Final Judgment (N.D. Cal. Nov. 13, 2008) (BTKMC achieved a settlement in which Juniper Networks recovered approximately $22.6 million in financial benefits for the company, as well as obtaining the institution of extensive and valuable corporate governance reforms)); and Comverse Technology, Inc. (*In re Comverse Tech., Inc. Derivative Litig.*, No. 601272106, Order and Final Judgment (E.D.N.Y.

-14-

July 1, 2010) (BTKMC achieved a settlement in which Comverse received financial benefits valued at approximately $60 million as well as corporate governance reforms)).

Furthermore, if appointed Lead Counsel, BTKMC will remain committed to the efficient and effective resolution of this matter. Accordingly, in conversations with counsel for Mr. Friedman, BTKMC has agreed to share certain litigation responsibilities with The Shuman Law Firm, thus maximizing the resources available to the derivative plaintiffs and, by extension, to the Company as nominal defendant. While BTKMC would necessarily assume sole decision-making authority, it will regularly consult with the Shuman Law Firm on all litigation matters and strategy.[11] Shuman likewise has extensive experience litigating on behalf of shareholder interests, including over 15 years' experience litigating securities fraud class actions and shareholder derivative actions. The firm has been appointed and has served as lead or co-lead counsel in shareholder cases throughout the nation. Shuman's firm resume provides further detail regarding the firm's extensive experience in securities class action and shareholder derivative litigation. [12]

Lasky & Rifkind, proposed Liaison Counsel, is a unique litigation law firm with offices in New York and Chicago. The firm represents both plaintiffs and defendants in complex commercial litigation, securities fraud actions, corporate take-over litigation, general business litigation and arbitrations. The firm's attorneys have successfully tried or prosecuted numerous cases, many resulting in multimillion dollar awards or settlements.[13]

---

[11] If this Court is inclined to appoint multiple counsel as lead counsel, the Shuman firm respectfully requests that this Court appoint Shuman as Co-Lead Counsel with BTKMC.
[12] *See* Shuman Resume, attached as Exhibit 3 to Winchester Decl.
[13] *See* Lasky & Rifkind Resume, attached as Exhibit 4 to Winchester Decl.

IV.    **CONCLUSION**

For the reasons set forth above, the Court should grant this motion and: (i) consolidate the Related Derivative Actions; (ii) appoint Ms. Mitchell and Mr. Friedman as Co-Lead Plaintiffs; and (iii) appoint the law firm of BTKMC as Lead Counsel and Lasky & Rifkind as Liaison Counsel.

Dated:  April 25, 2011

LASKY & RIFKIND, LTD.

/s/ Norman Rifkind
Leigh Lasky
Norman Rifkind
Amelia S. Newton
Heidi VonderHeide
350 N. LaSalle
Suite 1320
Chicago, IL 60610
Tel: (312) 634-0057
Fax: (312) 634-0059

*Local Counsel for Plaintiffs Bonnie Mitchell and Michael Friedman and Proposed Liaison Counsel*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Eric L. Zagar
Robin Winchester
Ligaya Hernandez
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (267) 948-2512

*Counsel for Proposed Co-Lead Plaintiff Bonnie Mitchell and Proposed Lead Counsel*

THE SHUMAN LAW FIRM
Kip B. Shuman
Rusty E. Glenn
885 Arapahoe Avenue
Boulder, CO  80303
Telephone: (303) 861-3003
Facsimile:  (303) 484-4886

*Counsel for Proposed Co-Lead Plaintiff*
*Michael Friedman*