IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE MITCHELL and MICHAEL FRIEDMAN, derivatively on behalf of BROADWIND ENERGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> J. CAMERON DRECOLL, *et al.*, <br><br> Defendants, <br> and <br><br> BROADWIND ENERGY, INC., <br><br> Nominal Defendant | Case No. 11-cv-01059 <br><br> Judge Robert W. Gettleman |

**REPLY MEMORANDUM OF DEFENDANTS DAVID P. REILAND, JAMES M. LINDSTROM, CHARLES H. BEYNON, WILLIAM T. FEJES, JR. AND TERENCE P. FOX IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED DERIVATIVE COMPLAINT**

Defendants David P. Reiland, James M. Lindstrom, Charles H. Beynon, William T. Fejes, Jr., and Terence P. Fox (collectively "the Outside Directors") respectfully submit the following reply memorandum in support of their motion to dismiss the Consolidated Derivative Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

In their opening memorandum, the Outside Directors pointed to three basic undisputed facts that when taken together defeat plaintiffs' claims against the Outside Directors challenging the Company's decision to go forward with a

secondary offering ("the Offering") of its stock. In their response, plaintiffs effectively concede all three. First, plaintiffs nowhere contend, nor could they, that the Outside Directors benefitted in any way either from the Offering that is the centerpiece of plaintiffs' claims or from any of the conduct challenged in the Complaint. Second, plaintiffs concede that the Offering provided a substantial benefit to Broadwind, and they have no response to defendants' showing that the Offering was in fact necessary to Broadwind's survival. Indeed, plaintiffs explicitly state *that they are not challenging the fairness of the Offering itself.* (*See* Plaintiffs' Memo. at 11.) Third, plaintiffs do not dispute that the Company was contractually obligated to allow Tontine and Drecoll to sell their shares of Broadwind stock at the same time that Broadwind offered its shares in the Offering. (*Id.*) In light of those concessions, plaintiffs clearly have no viable claim as to the Outside Directors.

**Count I (Breach of Fiduciary Duty of Loyalty and Good Faith).** Because they have no response to the Outside Directors' arguments about the foregoing facts and their significance, plaintiffs are left with a claim in Count I that is both frivolous and *de minimus*. Plaintiffs' response makes clear that they premise their case solely on the *costs* incurred in bringing the Offering to the market. (*See* Plaintiffs' Memo. at 11 (plaintiffs "are not challenging the fairness of the Offering itself, but instead [are] challenging the terms of the Offering *apportioning costs and expenses between the Company, Tontine and Drecoll*") (emphasis added).) More specifically, plaintiffs claim that the Company, instead of paying $725,000 in certain (unspecified) costs in order to raise $53.9 million in

2

desperately needed capital, should either have not gone forward with the Offering or should have paid only $427,750 in costs, with the other sellers, Tontine and Cameron Drecoll, paying the rest. Thus, plaintiffs' claim in Count I is that the Outside Directors breached their fiduciary duties by not requiring Tontine and Drecoll to pay a "pro rata share" of the costs. But the Company was required to pay expenses associated with Tontine's and Drecoll's stock sales in the Offering, and plaintiffs nowhere challenge the fairness of the contracts in which the Company agreed to do so.

Moreover, plaintiffs concede that each of the sellers paid their own underwriting discount that reduced the proceeds of the Offering (*see* Outside Directors' Memo. at 9), and plaintiffs do not identify *any* specific cost that was not included in the Company's contractual obligation to Tontine and Drecoll but was nevertheless paid by Broadwind. In any event, plaintiffs have no response to the Outside Directors' argument that plaintiffs' claim regarding costs – that the Outside Directors breached fiduciary duties by not stopping an Offering that was necessary for the Company's survival in order to save costs amounting to one half of one percent of the proceeds – is frivolous and clearly does not justify significant expenditure of Company assets.

**Count II (Waste of Corporate Assets).** Similarly, as to the claim for waste of corporate assets in Count II, the only "waste" that plaintiffs can point to is the failure to charge Tontine and Drecoll with their alleged share of Offering costs. That claim is without merit for the same reasons that the breach of fiduciary duty

3

claim fails. Indeed, based on the allegations of the Complaint, plaintiffs cannot possibly establish – based solely on the Offering costs – that the transaction in which the Company received the capital that it needed to survive was "so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *See In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 74 (Del. 2005).

**Count III (Breach of Fiduciary Duty for Selling Stock Based on Knowledge of Material Non-Public Information.)** Plaintiffs still do not explain how the Outside Directors could possibly be liable under Count III, which alleges a breach of fiduciary duty for selling stock based on "non-public information," given that the Outside Directors did not sell any stock. Further, the only additional argument that plaintiffs make in connection with Count III is based on the *timing* of the Offering. Plaintiffs concede that if the Offering had gone forward after the goodwill impairment analysis had been completed (and Tontine and Drecoll had paid a pro rata share of the costs), there would be no breach of fiduciary duty claim. (*See* Plaintiffs' Memo. at 24.) But plaintiffs' argument depends on the premise that the Outside Directors knew what the impairment analysis would show and nevertheless permitted the Offering to occur. That assertion, however, is belied by the Complaint's concession that the Company's goodwill impairment analysis was not even completed until March 2010, almost two months after the Offering took place. (Compl. ¶¶ 48-49.) Plaintiffs have not alleged any *facts* to support their conclusory allegation that the impairment analysis was intentionally delayed.

4

Plaintiffs have certainly not alleged facts that would demonstrate that anyone at Broadwind, let alone the Outside Directors, was in possession of material, non-public information prior to the Offering that would have obligated the Outside Directors to prevent the Offering from taking place. Plaintiffs thus allege no facts that would "state a claim to relief that is plausible on its face" under Rule 8. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). (*See also* Outside Directors' Memo. at 15-17.)[1]

Moreover, plaintiffs' argument regarding the timing of the Offering comes full circle back to the frivolous argument regarding the costs of the Offering, because other than the *de minimus* impact of those costs, plaintiffs make no effort to identify any harm to *Broadwind* resulting from the fact that the Offering occurred when it did. (*See* Plaintiffs' Memo. at 24.) On the contrary, plaintiffs do not dispute that the Company was in dire need of capital (in fact plaintiffs' memorandum nowhere even mentions that need) nor do plaintiffs dispute that that the Offering itself was fair to the Company.

---

[1] Because the claim regarding "non-public information" is deficient under Rule 8, plaintiffs' effort to show – by relying solely on a Delaware case applying Delaware state law on a procedural issue – that Rule 9(b) of the Federal Rules of Civil Procedure does not apply to Count III is beside the point. (*See* Plaintiffs' Memo. at 25-26.) In any event, Count III clearly "sounds in fraud" under Seventh Circuit law, and so Rule 9(b) applies to it. (*See* Outside Directors' Memo. at 17; Tontine Defendants' Reply Memo. at 12-13.)

5

## CONCLUSION

For the foregoing reasons, the Consolidated Derivative Complaint should be dismissed with prejudice as to Defendants David P. Reiland, James M. Lindstrom, Charles H. Beynon, William T. Fejes, Jr., and Terence P. Fox.

Respectfully submitted,

Dated:	December 9, 2011	/s/ Jeffrey R. Tone

John M. George, Jr.
Jeffrey R. Tone
Katten & Temple LLP
542 S. Dearborn, Suite 1060
Chicago, IL 60605
(312) 663-0800
jgeorge@kattentemple.com
jtone@kattentemple.com