IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE MITCHELL and MICHAEL FRIEDMAN, Derivatively on Behalf Of Nominal Defendant BROADWIND ENERGY, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 11-CV-01059 |
| DAVID P. REILAND, *et al.,* | ) ) | Honorable Robert W. Gettleman |
| Defendants, | ) ) ) | |
| and | ) ) | |
| BROADWIND ENERGY, INC., | ) ) | |
| Nominal Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT J. CAMERON DRECOLL'S MOTION TO
DISMISS CONSOLIDATED DERIVATIVE COMPLAINT**

Defendant, J. Cameron Drecoll ("Drecoll"), by his attorneys, submits this reply

memorandum in support of his motion to dismiss the Consolidated Derivative Complaint

("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

## I. INTRODUCTION

Plaintiffs' Complaint asserts that Drecoll, while the CEO and a director of Broadwind

Energy, Inc. ("Broadwind"), breached his fiduciary duty to Broadwind by approving a secondary

offering of stock ("the Offering"), in which Broadwind, Tontine,[1] and Drecoll sold a total of

17,500,000 shares of Broadwind stock. Plaintiffs claim that Drecoll should have stopped the

---

[1]     "Tontine" consists of Defendants Tontine Capital Partners, L.P., Tontine Capital
Overseas Master Fund, L.P., Tontine Partners, L.P., Tontine Overseas Fund, Ltd., and Tontine 25
Overseas Master Fund, L.P.

Offering because it benefitted only Tontine and Drecoll and was not in Broadwind's "best interests." Plaintiffs have clarified their claims somewhat in Plaintiffs' Memorandum in Opposition to Defendants' and Nominal Defendants' Motions to Dismiss ("Plaintiffs' Memorandum"). It is now clear that the only concrete harm they can point to allegedly caused by Drecoll is Broadwind's payment of expenses attributable to stock Drecoll sold personally as part of the Offering. The amount of such expenses attributable to Drecoll's shares is $47,300.[2] The arguments advanced in Plaintiffs' Memorandum in support of even this claim are specious. Accordingly, the Complaint should be dismissed as to Drecoll in its entirety with prejudice.

## II. **REPLY ARGUMENT**

The Complaint alleges that Drecoll, along with the Outside Directors and Tontine, wrongfully caused Broadwind to undertake the Offering "against the Company's best interests." (Complaint, ¶ 2.) The Complaint asserts four claims against Drecoll (Counts I-III and V). As demonstrated in Drecoll's principal brief and below, each of those claims should be dismissed.

### A. **Plaintiffs' Complaint Should be Dismissed in its Entirety for Failure to Make a Demand upon Broadwind.**

As an initial matter, Plaintiffs' Complaint should be dismissed because Plaintiffs have failed to sufficiently allege that they have made a demand upon Broadwind or that such a demand would have been futile. In support of this argument, Drecoll incorporates the arguments and authorities set forth in Broadwind's Reply Memorandum in Support in Support of its Motion to Dismiss.

Plaintiffs attempt to excuse their non-compliance with their obligation to make a demand

---

[2] The total amount of expenses attributable to Tontine's and Drecoll's stock sales is $305,000. (Plaintiffs' Memorandum at 4.) The total proceeds of the sale of shares sold by both of them was $39,603,000 of which $6,145,000 was Drecoll's. (Complaint, ¶¶ 28, 29.) Therefore, Drecoll's proportionate share of the $305,000 is $47,300.

upon Broadwind by invoking the entire fairness doctrine. The cases they cite invoke this doctrine where there is "self dealing" or "a corporate fiduciary's stance on both sides of a transaction." (Plaintiffs' Memorandum at 8.) This is, of course, not the situation here at all. Drecoll did not engage in any dealing with Broadwind regarding the sale of his personal stock; rather he sold the stock in a public market at the same time Broadwind sold its stock.[3] Plaintiffs recognize this fatal flaw in their argument and now attempt to circumvent it by arguing that the self dealing related to the allocation of expenses related to the Offering. However, this still presents a problem for Plaintiffs because, as they recognize, Drecoll had an agreement with Broadwind which required it to pay expenses incurred on behalf of Drecoll in connection with an offering including stock owned by Drecoll. Plaintiffs response to this is that "[p]laintiffs alleged that Broadwind paid costs and expenses for Tontine and Drecoll it wasn't required to under the these *[sic]* agreements." (Plaintiffs' Memorandum at 11.) This is not true.

The only paragraphs in the Complaint which relate to this issue are paragraphs 30 and 31. Paragraph 30 alleges, in relevant part, that "[o]n information and belief, the Company bore a substantial portion of the costs and expenses of the Offering." Paragraph 31 states, in relevant part, that "[o]n information and belief, the Company, Tontine and Drecoll entered into one of more undisclosed agreements governing the payment of costs and expense, under which the company agreed to pay a disproportionate share of costs and expenses in connection with the Offering." Thus there is no allegation that Broadwind paid more than it was contractually obligated to under the agreement it had with Drecoll. Nor could there be. In connection with

---

[3] The Offering was structured such that all of the shares offered by Broadwind and 5,000,000 of the shares offered by Tontine had to be sold before any of Drecoll's shares would be offered for sale. (January 15, 2010 Prospectus ("Prospectus") at 7.) This prospectus is attached to Broadwind's Memorandum in Support of its Motion to Dismiss as Exhibit B.

Broadwind's acquisition of Brad Foote Gear Works, Inc. ("Brad Foote"), Broadwind entered into a Registration Rights Agreement ("BFRRA") with the former shareholders of Brad Foote, including Drecoll, on October 19, 2007.[4] (Prospectus at 83.) This agreement was entered into at arms' length before Drecoll was a Broadwind shareholder. The BFRRA governed Drecoll's and Broadwind's respective rights and obligations in connection with registering Drecoll's shares of Broadwind stock for resale. The BFRRA states that:

> *All* expenses incident to the Company's performance of or compliance with this Agreement, including, without limitation, all registration and filing fees payable by the Company, fees and expense of compliance by the Company with securities or blue sky laws, printing expenses of the Company, messenger and delivery expenses of the Company, and fees and disbursements of counsel of the Company and all independent certified public accountants of the Company, and other Persons retained by the Company will be borne by the Company . . .

(BFFR Section 2.7, emphasis supplied.) It should be noted that notwithstanding this broad language, Drecoll did have underwriter discounts deducted from his sales proceeds. (Complaint, ¶ 28.) Thus, there is no excuse for Plaintiffs' failure to make a demand upon Broadwind's board of directors and the Complaint should be dismissed for this reason alone.

## B.  Count I Fails to State a Claim for Breach of Fiduciary Duty Against Drecoll.

In Count I, Plaintiffs assert that Drecoll and the Outside Directors "breached their fiduciary duties of loyalty and good faith by causing and approving the Offering," which Plaintiffs allege could not have been "an exercise of good faith business judgment." (Complaint,

---

[4]      The BFRRA, attached to the Memorandum in Support of Defendant J. Cameron Drecoll's Motion to Dismiss Consolidated Derivative Complaint as Exhibit A, was incorporated by reference in Broadwind's Form 10-K for the year ended December 31, 2008, which was in turn incorporated by reference in the Prospectus. (Prospectus at 96.) Documents incorporated by reference are considered to be "part of [the] prospectus." (*Id.*) Accordingly, this Court may consider the Registration Rights Agreement in connection with this motion to dismiss.

¶ 71.)

In their response, Plaintiffs adhere to their position that the claimed breach of fiduciary duty relates to the payment of "an unfair share of the costs and expenses of the Offering and an alleged delay in testing for and taking good will impairments." (Plaintiffs' Memorandum at 24.) As pointed out above, the first prong of this argument has no merit because Drecoll had a contractual right to have his shares sold in an underwritten offering. As to the second prong, Plaintiffs fail to explain how the alleged delay in taking a good will impairment disadvantaged Broadwind.[5]

C.      **Count II Fails to State a Claim for Waste of Corporate Assets.**

In Count II, Plaintiffs claim that the Individual Defendants "wasted the Company's assets" by approving the Offering. (Complaint, ¶ 75.) Plaintiffs have now pared this claim down to rely only on the allegedly wrongful agreement by Broadwind to pay Drecoll's share of the costs of offering "without receiving anything for the company in return." (Plaintiffs' Memorandum at 28.) This is demonstrably false. As noted above, the BFRRA was entered into in connection with Broadwind's acquisition of Brad Foote. Therefore, there was indisputably consideration for the rights granted to Drecoll under the BFFRA.

---

[5]      With regard to Count III, Plaintiffs still have not explained away their failure to plead facts that would show that Drecoll (or anyone else at Broadwind) was in possession of material, non-public information prior to the Offering that would have obligated any of them to prevent the Offering from going forward. See Reply Memorandum of Defendants David P. Reiland, James M. Lindstrom, Charles H. Beynon, William T. Fejes, Jr. and Terence P. Fox in Support of Motion to Dismiss Consolidated Derivative Complaint, at 4-5.

### D.    Count V Fails to State a Claim for Unjust Enrichment.

In Count V, Plaintiffs allege that Drecoll and Tontine were "unjustly enriched by their receipt of proceeds from the illegal sale of Broadwind common stock…" (Complaint, ¶ 88.) This claim also fails.

Recognizing the lack of relationship between any enrichment by Drecoll by the Offering and  an impoverishment of Broadwind, Plaintiffs now argue that no such relationship is required for an unjust enrichment claim based on breach of fiduciary duty.  In support of this argument they cite *Jackson Nat. Life Ins. Co. v. Kennedy,* 741 A.2d 377 (Del. Ch. 1999).  However, that case does not support Plaintiffs' argument.  The transaction in *Jackson* was a classic unjust enrichment situation in which the defendants were accused of profiting *at the expense of* the plaintiff company.  The court there cites the conventional test for unjust enrichment which requires "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment. . ." *Id.* at 393-94.  Moreover, the court there found that "a clear relation exists between the enrichment and impoverishment." *Id.* at 394.  Thus, any attempt to read that requirement out of the test for unjust enrichment based on the *Jackson* case is of no avail.

In further support of this argument, Drecoll incorporates the arguments and authorities set forth in Tontine Defendants' Reply Memorandum in Further Support of Motion to Dismiss Verified Consolidated Shareholder Derivative Complaint, at 11-12.  Thus, Count V does not plead a factual basis to support plaintiffs' theory of liability.

### IV.  CONCLUSION

For the foregoing reasons and those stated in his principal brief, the Consolidated Derivative Complaint should be dismissed with prejudice as to defendant, J. Cameron Drecoll.

Respectfully submitted,


/s/ James D. Adducci
One of the attorneys for defendant, J. Cameron
Drecoll



James D. Adducci
Paul E. Lehner
Marshall L. Blankenship
Adducci, Dorf, Lehner,
 Mitchell & Blankenship, P.C.
150 North Michigan Avenue, Suite 2130
Chicago, Illinois  60601
(312) 781-2800

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendant, J. Cameron Drecoll, certifies that on December 9, 2011, he caused a copy of the foregoing Reply Memorandum in Support of Defendant J. Cameron Drecoll's Motion to Dismiss Consolidated Derivative Complaint, to be sent by ECF delivery, to the persons listed below.

Eric L. Zagar
Kristen L. Ross
Ligaya Hernandez
Robin Winchester
**KESSLER TOPAZ MELTZER**
**& CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Phone: (610) 667-7706
Fax: (267) 948-2512
*Counsel for Bonnie Mitchell*

Leigh R. Lasky
Norman Rifkind
Amelia S. Newton
Heidi VanderHeide
**LASKY & RIFKIND, LTD.**
351 W. Hubbard Street, Suite 401
Chicago, IL 60654
Phone: (312) 634-0057
Fax: (312) 634-0059
*Counsel for Michael Friedman*
*Counsel for Bonnie Mitchell*

Kip B. Shuman
Rusty E. Glenn
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO 80302
Phone: (303) 861-3003
Fax: (303) 484-4886
*Counsel for Michael Friedman*

James Wallace Ducayet
Kristen R. Seeger
Brian S. Shull
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
*Counsel for Broadwind Energy and Peter C. Duprey*


John M. George, Jr.
Jeffrey R. Tone
**KATTEN & TEMPLE, LLP**
542 S. Dearborn Street, Suite 1060
Chicago, IL 60605
Phone: (312) 663-0800
*Counsel for David P. Reiland*
*Counsel for Charles H. Beynon*
*Counsel for William T. Fejes, Jr.*
*Counsel for Terrence P. Fox*
*Counsel for James M. Lindstrom*


John C. Martin
**LAW OFFICES OF JOHN C. MARTIN, LLC**
30 North LaSalle Street, Suite 3400
Chicago, IL 60602
Phone: (312) 368-9000
*Counsel for Tontine Capital Partners, L.P.*
*Counsel for Tontine Capital Overseas Master Fund, L.P.*
*Counsel for Tontine Partners, L.P.*
*Counsel for Tontine Overseas Fund, Ltd.*
*Counsel for Tontine 25 Overseas Master Fund, L.P.*


Gary Stein
Michael G. Cutini
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2441
*Counsel for Tontine Capital Partners, L.P.*
*Counsel for Tontine Capital Overseas Master Fund, L.P.*
*Counsel for Tontine Partners, L.P.*
*Counsel for Tontine Overseas Fund, Ltd.*
*Counsel for Tontine 25 Overseas Master Fund, L.P.*


/s/ James D. Adducci

9