# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BONNIE MITCHELL and MICHAEL FRIEDMAN, Derivatively on Behalf of Nominal Defendant BROADWIND ENERGY, INC., | )<br>)<br>)<br>) Case No. 11-CV-01059 |
| Plaintiff, | ) Honorable Robert W. Gettleman |
| v. | ) |
| DAVID P. REILAND, *et al.*, | ) |
| Defendants, | ) |
| and | ) |
| BROADWIND ENERGY, INC. | ) |
| Nominal Defendant. | ) |

**BROADWIND'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.      THE ENTIRE FAIRNESS TEST DOES NOT APPLY. ..................................................... 2

II.     PLAINTIFFS DO NOT PLEAD PARTICULARIZED FACTS DEMONSTRATING THAT A DEMAND UPON THE BOARD OF DIRECTORS WOULD BE FUTILE ....... 5

        A.     Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Lack Independence ................................................................................... 7

        B.     Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Face a Substantial Likelihood of Liability .............................................. 9

              1.     Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Face a "Substantial Likelihood" of Liability Relating to the Allocation of Expenses ............................................................................... 10

              2.     Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Face a Substantial Likelihood of Liability for Approving the Offering ........................................................................................................ 11

              3.     Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Face a Substantial Likelihood of Liability for Violating the Company's Code of Ethics and Business Conduct .................................... 13

        C.     Plaintiffs Fail to Allege Particularized Facts Sufficient to Create a Reasonable Doubt that Any Challenged Actions Were the Product of a Valid Exercise of the Directors' Business Judgment .............................................................................. 14

CONCLUSION ............................................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) .................................................................................................. passim

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
   845 A.2d 1040 (Del. 2004) ......................................................................................................6, 7

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) .................................................................................................6, 8, 9

*Bronstein v. Austin*,
   2008 WL 4735230 (N.D. Ill. May 30, 2008) ........................................................................10

*In re Caremark Int'l Inc. Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996) ................................................................................................14

*In re Citigroup Inc. S'holder Deriv. Litig.*,
   964 A.2d 106 (Del. Ch. 2009) ..................................................................................12, 13, 14

*In re Dow Chem. Co. Deriv. Litig.*,
   2010 WL 66769 (Del Ch. Jan. 11, 2010) ..............................................................................12

*Fener v. Gallagher*,
   2005 WL 2234656 (N.D. Ill. Sept. 8, 2005) ...........................................................................8

*Garza v. Belton*,
   2010 WL 3324881 (N.D. Ill. Aug. 13, 2010) .........................................................................5

*Grimes v. Donald*,
   673 A.2d 1207 (Del. 1996) ......................................................................................................6

*Grobow v. Perot*,
   539 A.2d 180 (Del. 1998) ........................................................................................................6

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) ...............................................................................................12

*Highland Legacy, Ltd. v. Singer*,
   2006 WL 741939 (Del. Ch. Mar. 17, 2006) ...........................................................................8

*In re J.P. Morgan Chase & Co. S'holder Deriv. Litig.*,
   906 A.2d 808 (Del. Ch. 2005) ...............................................................................................14

*Kahn v. Lynch Comm. Sys., Inc.*,
   638 A.2d 1110 (Del. 1994) ......................................................................................................8

*Khanna v. McMinn*,
    2006 WL 1388744 (Del. Ch. May 9, 2006) .......................................................................7, 8

*Mizel v. Connelly*,
    1999 WL 550369 (Del. Ch. July 22, 1999) ............................................................................9

*In re Primedia Inc. Deriv. Litig.*,
    910 A.2d 248 (Del. Ch. 2006) ............................................................................................2, 3

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) .......................................................................................9, 10, 15

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007) ............................................................................................6, 11

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) .......................................................................................................14

*White v. Panic*,
    783 A.2d 543 (Del. 2001) .......................................................................................................11

*Williamson v. Cox Commc'ns, Inc.*,
    2006 WL 1586375 (Del. Ch. June 5, 2006) ............................................................................8

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) .......................................................................................................10

**STATUTES**

8 Del. C. § 102(b)(7) ......................................................................................................................10

## INTRODUCTION

In its Opening Memorandum ("Mem."), Broadwind demonstrated that Plaintiffs failed to make a demand on Broadwind's Board of Directors in March 2011, and that Plaintiffs further failed to show that a demand upon the Board would have been futile. Broadwind also demonstrated that the theory on which Plaintiffs' Complaint appeared to rest – that the Offering was a self-dealing transaction – is fundamentally flawed. In fact, far from constituting a "self-dealing" transaction between the insiders and the Company, the secondary offering here was a transaction in which the insiders and the Company were on the same side.

Plaintiffs essentially concede this point, abandoning any challenge to the Offering as a whole. Instead, Plaintiffs' Opposition has narrowed this case to a challenge to Broadwind's purported "payment" of Tontine's and Mr. Drecoll's *pro rata* costs and expenses of the offering. (Opp., Dkt. 97 at 8-9.) But Plaintiffs admit that the proceeds that Tontine and Mr. Drecoll received were *net* of underwriter commissions and discounts, which were deducted by the underwriters before those proceeds were remitted. (*See* Compl. ¶ 28.) And Plaintiffs also admit that the Company's Registration Rights Agreements with Mr. Drecoll and Tontine govern the payment of other costs and expenses in connection with the Offering. (Opp., Dkt. 97 at 11.) These agreements plainly *required* the payment of the expenses at issue here. And in any event, those agreements were the product of arms-length negotiations with Tontine and Mr. Drecoll *before* they were insiders of the Company and therefore cannot be challenged as self-dealing transactions. Far from constituting a give-away to insiders, any payments at issue here were compelled by a valid and binding contractual requirement. As Plaintiffs concede, failure to honor such a contractual requirement would have itself constituted a breach of the Directors' fiduciary duties. (*Id*. at 18; Compl. ¶ 18.)

In short, despite having significantly lowered the stakes of this dispute to a nearly trivial

proportion (*i.e.*, no more than $305,000 in a transaction that netted nearly $54 million to the Company), Plaintiffs still fail to allege that a majority of the Company's Board of Directors at the time the lawsuit was filed (the "Demand Board") would be legally incapable of considering a demand. The Complaint should be dismissed.

## ARGUMENT

As Broadwind previously explained, (Mem., Dkt. 86 at 5-6), well-established Delaware caselaw provides that a plaintiff is prohibited from seeking to assert claims on behalf of a corporation without first making a demand upon the board of directors or showing that demand is excused. It is the exceedingly rare case under Delaware law in which a plaintiff can demonstrate *with particularity* that it would have been futile to make a demand, either because the directors are interested or lack independence, or because the challenged transaction was not the product of a valid exercise of business judgment. (*Id*. at 7.)

## I. THE ENTIRE FAIRNESS TEST DOES NOT APPLY.

As an initial matter, Plaintiffs' reliance on the "entire fairness" doctrine is unavailing here. As previously explained, the "entire fairness" test applies *ab initio* only to a small subset of transactions, such as a "squeeze out" merger or a merger between two companies under the control of a single controlling shareholder. (*Id*. at 7 n.4.) Where, as here, a transaction does not fall into this limited category, Plaintiffs bear the burden of demonstrating that the normal business judgment presumption does not apply.

Plaintiffs seek to rebut the business judgment presumption by arguing that the transaction at issue was a self-dealing transaction between the Company and a controlling shareholder. (Opp., Dkt. 97 at 8-9.) Plaintiffs concede that a self-dealing transaction is one in which an insider receives an "exclusive" benefit, not shared by the company or shareholders at large, that causes a detriment to the company. (*Id*. at 9; Mem., Dkt. 86 at 14 (citing *In re Primedia Inc*.

2

*Deriv. Litig.*, 910 A.2d 248, 260-61 (Del. Ch. 2006)).) They further concede, as they must, that the Offering itself was not a self-dealing transaction, since it involved the sale of shares to unaffiliated third parties. (Opp., Dkt. 97 at 11.) Instead, Plaintiffs now refocus their challenge to purported undisclosed "agreements" by the Company to pay Mr. Drecoll's and Tontine's costs and expenses in the Offering. (*Id*.).

In order to understand this claim, it is useful to differentiate among the various types of costs involved in any offering such as the one here. Underwriter discounts and commissions – *i.e.*, the compensation provided to the underwriters – and other costs incident to the offering, such as transfer taxes, are customarily deducted by the underwriter from the proceeds of the offering before those proceeds are remitted to the seller. Plaintiffs' allegations and the Company's own disclosures make clear that this is what happened here. (*See* Compl. ¶ 28 (Company, Tontine and Mr. Drecoll received proceeds "before expenses, *but after underwriters' discounts*, of $5.4625 per share") (emphasis added); *see also* Prospectus, Dkt. 86-2 at 1 (indicating that underwriting discounts and commissions would be deducted from the proceeds received by the selling shareholders).)

The other category of costs and expenses incurred in an offering like this one are in connection with the preparation and filing of the prospectus and related documents. These include registration and filing fees, legal fees, auditor fees, the internal time and expense of company personnel, and costs of printing the prospectus and other related costs and expenses. Here, the responsibility for these types of expenses was expressly governed by two different agreements between the Company and Tontine and Mr. Drecoll. Both agreements contained provisions requiring the Company to pay expenses associated with the registration of their shares. (*See* Tontine Mem., Dkt. 90 at 3-4; Drecoll Mem., Dkt. 84 at 4.) The pertinent provision

3

in the agreement with the Tontine entities (which is consistent with the agreement with Mr. Drecoll) provided as follows:

> *All expenses* incident to the Company's performance of or compliance with this Agreement including, without limitation, all registration and filing fees payable by the Company, fees and expenses of compliance by the Company with securities or blue sky laws, printing expenses of the Company, messenger and delivery expenses of the Company, and fees and disbursements of counsel for the Company and all independent certified public accountants of the Company, and other Persons retained by the Company will be borne by the Company, and the Company will pay its internal expenses (including, without limitation, all salaries and expenses of the Company's employees performing legal or accounting duties), the expense of any annual audit or quarterly review, the expense of any liability insurance of the Company and the expenses and fees for listing or approval for trading of the securities to be registered on each securities exchange on which similar securities issued by the Company are then listed or on any automated quotation system of a national securities association on which similar securities of the Company are quoted.

(Tontine Registration Rights Agreement ("Tontine RRA"), Dkt. No. 90-2 at ¶ 2.8 (emphasis added); *see also* Drecoll Registration Rights Agreement ("Drecoll RRA"), Dkt. 84, Ex. A at ¶ 2.7; Opp., Dkt. 97 at 11.)

With this context, it is clear that Plaintiffs' claim is without merit. Plaintiffs assert that the Company "paid costs and expenses for Tontine and Drecoll it wasn't required to under" the Registration Rights Agreements. (Opp., Dkt. 97 at 11 (citing Tontine RRA, Dkt. 90-2 at ¶ 2.8 (listing as expenses not obligated to be paid by the Company "underwriting fees, discounts and expenses," "selling commissions or stock transfer taxes," and "any other expenses incurred by or on behalf of such Designated Holder . . . other than expenses which the Company is expressly obligated to pay pursuant to this Agreement"); Drecoll RRA, Dkt. 84, Ex. A at ¶ 2.7 (same)).) But Plaintiffs do not identify a single specific expense paid by the Company that does not fall within the language of the the Registration Rights Agreements quoted above. And as discussed above, the underwriters' discounts, selling commissions, and stock transfer taxes were deducted from the proceeds each selling shareholder received from the Offering, and thus the Company

4

did *not* "pay" these costs and expenses on behalf of either Tontine or Mr. Drecoll at all – they each received their proceeds *net* of such costs and expenses. (*See* Compl. ¶ 28.) In short, Plaintiffs provide no well-pleaded factual basis for any claim that the Company did not comply with its obligations under the agreements or that it paid any other costs and expenses not otherwise governed by the agreements. As such, Plaintiffs have failed to allege any basis for application of the entire fairness doctrine.

In addition, Plaintiffs do not, and cannot, challenge the Registration Rights Agreements themselves. As explained in Tontine's Opening Memorandum, the initial Tontine Registration Rights Agreement was negotiated prior to Tontine's investment in Broadwind, and indeed makes clear that the rights conferred in the agreement are consideration for that investment. (Tontine RRA, Dkt. No. 90-2 at 1.) Likewise, the Company and the former shareholders of Brad Foote, including Mr. Drecoll, entered into an October 19, 2007 Registration Rights Agreement in connection with the Company's purchase of Brad Foote. (*See* Drecoll Mem., Dkt. 84 at 3 and Ex. A.) Again, this agreement was negotiated before Mr. Drecoll became affiliated with the Company, and was consideration for the Company's purchase of Brad Foote. (Drecoll RRA, Dkt. 84, Ex. A at 2.) As such, neither of these transactions were with insiders, but instead were arms-length transactions for which the Company received consideration. And in any event, these agreements were entered prior to the time that any Plaintiffs were stockholders in the Company (*see* Compl. ¶¶ 6-7), and thus Plaintiffs do not have standing to challenge them. *See* Fed. R. Civ. P. 23.1; *Garza v. Belton*, 2010 WL 3324881, at *9 (N.D. Ill. Aug. 13, 2010).

## II.     PLAINTIFFS DO NOT PLEAD PARTICULARIZED FACTS DEMONSTRATING THAT A DEMAND UPON THE BOARD OF DIRECTORS WOULD BE FUTILE.

As Plaintiffs concede, the *Aronson* test governs whether the Complaint pleads that a demand upon the Board is futile. (Opp., Dkt. 97 at 12.) That test directs the Court to determine

5

"whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). Under well-established Delaware law, directors are presumed to be disinterested and independent. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004). And while Plaintiffs concede they must establish "reasonable doubt" that a majority of the directors are disinterested or independent (*see* Opp., Dkt. 97 at 7), they dramatically understate what it takes to satisfy this requirement. Plaintiffs suggest that it is enough that they themselves might have "reason to doubt" the ability of the Board to consider a demand. (*Id.*) Contrary to Plaintiffs' argument, however, establishing demand futility is a "difficult feat" under Delaware law, *Ryan v. Gifford*, 918 A.2d 341, 352 n.23 (Del. Ch. 2007), and the issue must be analyzed on a "case-by-case basis" utilizing an objective, not a subjective, standard. *Grobow v. Perot*, 539 A.2d 180, 186 (Del. 1998).[1] In addition, derivative suits are governed by the heightened pleading requirements of Federal Rule of Civil Procedure 23.1 and "must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by [] Rule 8(a)." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). These heightened pleading requirement are more demanding than the pleading requirements under Rule 8 or Rule 12(b)(6). Indeed, in the Rule 23.1 context, "conclusory allegations of fact or law not supported by allegations of specific fact may not be taken as true." *Grobow*, 539 A.2d at 187. "Likewise, inferences that are not objectively

---

[1] Plaintiffs principally rely upon *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996), for their contention that they only need raise a "reason to doubt" that Broadwind's Board can make a disinterested decision. (Opp., Dkt. 97 at 7.) But *Grimes* explains both that the burden on a derivative plaintiff is high and that reasonable doubt is an objective test. 673 A.2d at 1216-17 and n.17. Moreover, the Delaware Supreme Court has explained that "[n]othing in *Grimes* was intended to weaken the traditional, objective reasonable doubt standard to be applied to the pleading threshold." *Beam*, 845 A.2d at 1050 n.26.

6

Case: 1:11-cv-01059 Document #: 102 Filed: 12/09/11 Page 11 of 20 PageID #:1274

reasonable cannot be drawn in the plaintiff's favor." *Beam*, 845 A.2d at 1048 (internal quotation marks omitted).

> **A.** **Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Lack Independence.**

Plaintiffs argue that four of the five members of the Demand Board lack independence. Plaintiffs assert that Messrs. Beynon, Fejes, and Fox are dominated by Tontine, an allegedly interested party. Plaintiffs further argue that Mr. Duprey is not independent of the remaining members of the Board because he is employed by the Company.

With respect to Messrs. Beynon and Fejes, Plaintiffs' primary argument is that their designation to the Board by Tontine undermines their independence. In this regard, however, Plaintiffs attempt to confuse the issue by first citing the Company's Prospectus and other public filings from the time of the transaction at issue, and then claiming that these disclosures are a concession that Tontine controlled Messrs. Beynon and Fejes, thereby rendering them not independent for demand purposes. (Opp., Dkt. 97 at 10.) However, as noted, the relevant question under *Aronson* is whether the Board would be capable of considering a demand *as of the time of the filing of the suit*, not the time of the transaction. (*See* Mem., Dkt. 86 at 10; *Aronson*, 473 A.2d at 814.) And it is undisputed that when this suit was filed in March 2011, Tontine had long since disclaimed Messrs. Beynon and Fejes as its designees and had no designees on the Board. (*See* Mem., Dkt. 86 at 11; Schedule 13D, filed 5/17/10, Dkt. 86-3 at 17.) Delaware caselaw is clear that past relationships are insufficient to undermine a director's independence. Instead, Plaintiffs must show that the director would feel indebted to the allegedly controlling party in the present. (*See* Mem., Dkt. 86 at 11; *see also Beam*, 845 A.2d at 1049 (longstanding business and social relationships do not give rise to a reasonable doubt that directors were independent of 94% owner of corporation); *Khanna v. McMinn*, 2006 WL

7

1388744, at *15-22 (Del. Ch. May 9, 2006) (directors with current and past personal and business relationships with allegedly interested party found to be independent); *Fener v. Gallagher*, 2005 WL 2234656, at *5 (N.D. Ill. Sept. 8, 2005) (same).) Plaintiffs have made no such showing. There are no allegations that, at the time of the lawsuit was filed (or at any other time) Messrs. Beynon and Fejes are or were employed by Tontine, that they have or had any ownership interest in Tontine, or that they received any remuneration from Tontine in connection with their service on the Board. (*See* Mem., Dkt. 86 at 11.)[2]

In any event, however, Plaintiffs do not even address the numerous cases holding that mere appointment to a board by an interested party is insufficient to undermine a directors' independence. (*See* Mem., Dkt. 86 at 11 (collecting cases).) Nor are Plaintiffs' allegations that Tontine was a "controlling shareholder" sufficient to raise a reasonable doubt as to the independence of the Board. (*See id*. at 11 n.7 (collecting cases).) Indeed, Plaintiffs' own authority recognizes that Plaintiffs must "alleg[e] *actual* control with regard to the particular transaction that is being challenged." (Opp., Dkt. 97 at 13 (citing *Williamson v. Cox Commc'ns, Inc.*, 2006 WL 1586375, at *4 (Del. Ch. June 5, 2006) (emphasis added)).) Because any such allegations relate to the adequacy of Plaintiffs' showing of demand futility, they must be pled with particularity. *See Brehm*, 746 A.2d at 254.[3] However, as made clear by the Tontine Defendants in their Opening Memorandum, such allegations are absent from the Complaint.[4]

---

[2] Plaintiffs seek to distinguish *Highland Legacy, Ltd. v. Singer,* 2006 WL 741939 (Del. Ch. Mar. 17, 2006) on its facts (Opp., Dkt. 97 at 23), but do not contest that the case stands for the proposition that allegations of control and domination based on past relationships are insufficient. *Id*. at *5 n.63.
[3] Plaintiffs' citation to *Kahn v. Lynch Comm. Sys., Inc.*, 638 A.2d 1110, 1114 (Del. 1994) for the proposition that Plaintiffs are entitled to discovery regarding whether Tontine exercised control over the transaction (Opp., Dkt. 97 at 13-14) is inapposite, as that case did not involve the heightened pleading standard that applies to allegations of demand futility. Indeed, as Magistrate Judge Keys recognized, Plaintiffs are not entitled to discovery, beyond initial disclosures, unless or until they demonstrate demand futility. (*See* Dkt. 96.)
[4] Plaintiffs' allegations with respect to Mr. Fox are even weaker. As Plaintiffs recognize, Mr. Fox was

Finally, Plaintiffs have not shown that Mr. Duprey is not independent. As Broadwind already noted in its Opening Memorandum, the mere fact that Mr. Duprey serves as Broadwind's CEO is not enough to negate his independence or disinterestedness. (Mem., Dkt. 86 at 11-12.) Instead, the relevant question is whether Mr. Duprey is beholden to any *interested* party. *See Brehm*, 746 A.2d at 258 (indicating that a director is only disqualified as lacking independence if he or she is beholden to an interested party). Plaintiffs have not alleged with particularity that any of the members of the Demand Board are interested, much less a majority of the Demand Board. (*Infra* at Section II.B.) Nor do Plaintiffs argue that Mr. Duprey is beholden the relevant alleged "interested parties" here – Tontine or Mr. Drecoll. And that is for good reason – at the time the lawsuit was filed, Tontine held less than 20% of the Company's stock and Mr. Drecoll was no longer an executive or member of the Board.[5]

### B. Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Face a Substantial Likelihood of Liability.

Delaware courts have flatly and consistently rejected the argument that demand is automatically rendered futile when directors are named as defendants. *See, e.g., Brehm*, 746 A.2d at 257 n.34 ("It is no answer to say that demand is necessarily futile because [] the directors would have to sue themselves, thereby placing the conduct of the litigation in hostile hands.") (internal quotation marks omitted). Because merely alleging director wrongdoing would allow an easy end run around a board's authority to make decisions on behalf of the corporation,

---

not appointed or designated by Tontine. (Opp., Dkt. 97 at 14.) Nor did he have any employment or ownership relationship with Tontine. (Mem., Dkt. 86 at 11.) Indeed, his only connection with Tontine was a limited proxy voting agreement. Plaintiffs have cited no authority indicating that such a tenuous relationship is sufficient to undermine the presumption of Mr. Fox's independence.

[5] Plaintiffs' citations to *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), and *Mizel v. Connelly*, 1999 WL 550369 (Del. Ch. July 22, 1999), (*see* Opp., Dkt. 97 at 20), are inapposite. Both of those cases held that certain executive officers lacked independence because they were beholden to directors *whom the court had already determined to be interested. See Rales*, 634 A.2d at 937; *Mizel*, 1999 WL 550369, at *3. The members of the Demand Board are not interested. (*Infra* at Section II.B.)

Delaware courts require a heightened showing when a shareholder alleges that demand is excused due to director wrongdoing. *See Aronson*, 473 A.2d at 818. In such cases, the plaintiff must plead particularized facts showing a "*substantial likelihood*" that the directors would face personal liability. *Rales*, 634 A.2d at 936.

In addition, where, as here, a provision in the Company's charter insulates directors from liability for claims based on a failure to exercise due care (*see* Certificate of Incorporation of Broadwind Energy, Inc. (Ex. A) at Article VIII; 8 Del. C. § 102(b)(7)), Plaintiffs must plead particularized facts indicating conduct going beyond negligence or gross negligence in order to show a substantial likelihood of liability. *See Wood v. Baum*, 953 A.2d 136, 141, 144 (Del. 2008) (taking judicial notice of a company's exculpatory charter provision and dismissing derivative suit because plaintiffs failed to plead particularized facts indicating that the directors engaged in non-exculpated conduct).[6] Instead, in such situations, Delaware law is clear that as to directors who are "exculpated from liability except for claims based on 'fraudulent,' 'illegal,' or 'bad faith' conduct, a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper." *Id.* at 141.

> 1. **Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Face a "Substantial Likelihood" of Liability Relating to the Allocation of Expenses.**

Plaintiffs assert that Messrs. Beynon, Fejes, Fox, and Reiland face a substantial likelihood of liability because they "approved the unfair allocation of costs between Broadwind, Drecoll and Tontine." (Opp., Dkt. 97 at 15.) However, the Complaint does not contain a single

---

[6] *See also Bronstein v. Austin*, 2008 WL 4735230, at *4 n.3 (N.D. Ill. May 30, 2008) (noting that, under an exculpatory charter provision, the directors were relieved of any liability for a breach of the duty of care unless such breach was reckless or intentional and holding that the complaint failed to allege that that the directors faced a substantial likelihood of liability).

10

particularized allegation demonstrating that these directors approved any allocation of costs between the Company, Tontine, and Mr. Drecoll. Indeed, the only such agreements were entered into March 1, 2007 and October 19, 2007, before Messrs. Beynon, Fejes, and Reiland even became members of the Board. (*See* Compl. ¶¶ 10-12 (indicating that Mr. Reiland has served on the Board since April 16, 2008, Mr. Beynon has served since October 24, 2007, and Mr. Fejes has served since March 19, 2009).)

Moreover, as discussed *supra* at 5, the agreements were with persons or entities who were third parties at the time and therefore could not possibly have involved self-dealing. As such, there is no basis for Plaintiffs' contention that entering into or honoring these agreements represented a breach of fiduciary duty. Indeed, as Plaintiffs' themselves recognize, *failing* to honor such a contract would constitute a breach of fiduciary duty. (*See* Opp., Dkt. 97 at 18; Compl. ¶ 18.) Finally, as discussed *supra* at 5, these agreements were entered into as consideration for Tontine's investment in the Company and Broadwind's purchase of Brad Foote. Thus, as arms-length agreements involving the exchange of consideration, these agreements were plainly not corporate waste. (*See* Mem., Dkt. 86 at 16 (citing, *inter alia*, *White v. Panic*, 783 A.2d 543, 554 (Del. 2001) (to plead a claim of waste, plaintiff must show that "the challenged transaction served no corporate purpose" or that "the corporation received no consideration at all")).)[7]

### 2. Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Face a Substantial Likelihood of Liability for Approving the Offering.

Plaintiffs also put forth a theory that Messrs. Beynon, Fejes, Fox, and Reiland face a

---

[7] Plaintiffs' citation of cases involving stock option backdating is wholly inapposite. (*See* Opp., Dkt. 97 at 15.) The backdating cases involve allegations that the directors intentionally violated a shareholder approved compensation plan. *See Ryan*, 918 A.2d at 355-56. Here, there are no allegations of any violations of prior contracts; indeed, the allocation of offering expenses was conducted in accord with prior agreements.

substantial likelihood of liability for "approving the offering at the behest of Tontine and Drecoll and issuing false, misleading and/or incomplete statements associated therewith." (Opp., Dkt. 97 at 16.) This theory fails for multiple reasons.

As an initial matter, Plaintiffs do not contest that Messrs. Beynon, Fejes, Fox, and Reiland did not participate in and did not benefit from the Offering, and thus would have no motive for allowing it to go forward in violation of their fiduciary duties.[8]

Moreover, as discussed *supra* at 10, in order to establish a substantial likelihood of liability, Plaintiffs must plead "particularized factual allegations that support the inference that the disclosure violation was made in bad faith, knowingly or intentionally." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 132 (Del. Ch. 2009) (internal quotation marks omitted). In short, Plaintiffs must establish that Messrs. Beynon, Fejes, Fox, and Reiland knowingly signed a misleading prospectus. Plaintiffs have not made such allegations here.

In this regard, Plaintiffs fail to demonstrate that any of these directors were in possession of material, non-public information regarding the impairment analysis at the time of the Offering. Plaintiffs concede that the impairment charge was not announced until nearly two months after the close of the Offering. (Compl. ¶ 32.) Plaintiffs do not demonstrate that this announcement was later than usual. And it was not – the annual goodwill impairment testing results had previously been announced in the Company's Form 10-K in March of the succeeding year (*i.e.* the fiscal year 2008 impairment charge was announced in March 2009, just as the fiscal year 2009 impairment charge was announced in March 2010). (*Id.* ¶ 45.) Nor do Plaintiffs make

---

[8] Additionally, as Broadwind demonstrated in its Opening Memorandum, merely asserting or speculating that Tontine or Mr. Drecoll sold stock while in the possession of material, non-public information is insufficient. Instead, such an allegation must be supported by "specific information that gives rise to a reasonable inference that the insiders sold stock 'on the basis and because of' adverse material non-public information." *In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at *14 n.88 (Del Ch. Jan. 11, 2010) (quoting *Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003)). Plaintiffs did not allege such information in their Complaint.

"specific factual allegations that reasonably suggest sufficient board involvement in the preparation of the disclosures." *Citigroup*, 964 A.2d at 133. Indeed, the only allegation of Board involvement is that Messrs. Beynon, Fejes, Fox, and Reiland signed the Form S-1 Offering Prospectus alleged to have been misleading and incomplete. (Opp., Dkt. 97 at 17.) This minimal level of involvement is patently insufficient to create a substantial likelihood of liability on the part of the directors. *See Citigroup*, 964 A.2d at 134. Indeed, any claims of intentional disclosure violations are particularly weak given that an outside consultant was involved in conducting the goodwill impairment testing here (*see* Prospectus, Dkt. 86-2 at 44) and the Company's outside auditor signed off on the challenged disclosures (*see* 2009 10-K, Dkt. 86-1 at 58). "[D]irectors of Delaware corporations are fully protected in relying in good faith on the reports of officers and experts." *Citigroup*, 964 A.2d at 132.

### 3. Plaintiffs Fail to Allege Particularized Facts Demonstrating that Any Directors Face a Substantial Likelihood of Liability for Violating the Company's Code of Ethics and Business Conduct.

Plaintiffs assert that Messrs. Beynon, Fejes, Fox, and Reiland face a substantial likelihood of liability for "violat[ing] express obligations under a corporation's core governance documents." (Opp., Dkt. 97 at 17.) Specifically, Plaintiffs allege that these directors failed to comply with the Company's Code of Ethics and Business Conduct ("Code"). (*Id*. at 18.) The Code requires employees and officers to make business decisions solely in the best interests of Broadwind, and explains that conflicts may arise when an employee or officer receives an improper personal benefit or gains personal enrichment from their position at the Company. (*Id*.)

This theory fails for three reasons. *First*, Messrs. Beynon, Fejes, Fox, and Reiland did not receive any "improper personal benefits," nor did they "gain[] personal enrichment" as a result of the Offering. These directors did not participate in the Offering, and there is no allegation that they received any personal benefit through or from the participation of Tontine or

13

Mr. Drecoll. *Second*, as discussed *supra* at Section I, the directors did not convey any improper benefit to Tontine or Mr. Drecoll; Tontine and Mr. Drecoll had a contractual right to participate in an Offering conducted by the Company and had a contractual right to the expense allocation. *Third*, to the extent Plaintiffs set forth a new theory that Messrs. Beynon, Fejes, Fox, and Reiland failed to oversee compliance with the Code of Ethics, Plaintiffs are attempting to allege a so-called *Caremark* claim. *See In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). But Delaware courts recognize that such "failure to oversee" claims recognized by the court in *Caremark* are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id*. Delaware law requires that plaintiffs asserting such claims plead with particularity either that the directors (a) "*utterly failed* to implement *any* reporting or information system or controls," or (b) "consciously" sought to avoid having any control deficiencies brought to their attention or deliberately ignored deficiencies of which they were informed. *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *see also Citigroup*, 964 A.2d at 122-23 ("[T]o establish oversight liability a plaintiff must show that the directors *knew* they were not discharging their fiduciary obligations or that the directors demonstrated a *conscious* disregard for their responsibilities such as by failing to act in the face of a known duty to act."). The Complaint contains no such well-pleaded allegations. Theory cannot excuse demand.

### C. Plaintiffs Fail to Allege Particularized Facts Sufficient to Create a Reasonable Doubt that Any Challenged Actions Were the Product of a Valid Exercise of the Directors' Business Judgment.

Finally, Plaintiffs concede that, in order to show demand is excused under the second prong of the *Aronson* test, "plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." (*See* Mem., Dkt. 86 at 19 (quoting *In re JP Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005)); Opp., Dkt.

14

97 at 21.) But Plaintiffs ignore that the Board's decision to enter the Offering was product of valid business judgment, and was not a violation of the Board's duty of good faith. (*See* Mem., Dkt. 86 at 19.) Plaintiffs also do not dispute that the Board was adequately informed in making the decision to conduct the Offering. (*Id.*) And Plaintiffs do not argue that the Board was not adequately informed with respect to the Registration Rights Agreements.

Instead, Plaintiffs attempt to argue that the second prong of *Aronson* is not satisfied because members of the Board failed to ensure that a goodwill impairment analysis was timely conducted and disclosed. (*See* Opp., Dkt. 97 at 21.) This theory is tantamount to a claim that the directors "failed to act." Such allegations are not subject to the *Aronson* test at all, however. Instead, they are governed by *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). The *Rales* test is essentially identical to the first prong of the *Aronson* test, and it only evaluates the disinterestedness and independence of the Demand Board. *Id.* at 933-34. As discussed *supra* at Sections II.A and II.B, the Demand Board was disinterested and independent, and thus the *Rales* test is satisfied for all of the same reasons that Plaintiffs cannot establish demand futility under the first prong of *Aronson*.

## CONCLUSION

For all of the above reasons, this action should be dismissed pursuant to Rule 23.1.

Dated: December 9, 2011

Respectfully submitted,

**/s/ James W. Ducayet**
James W. Ducayet
Kristen R. Seeger
Meredith Jenkins Laval
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Broadwind Energy, Inc.*

## **CERTIFICATE OF SERVICE**

I, Meredith Jenkins Laval, one of Nominal Defendant Broadwind Energy, Inc.'s attorneys, hereby certify that on December 9, 2011, service of the foregoing Broadwind's Reply Memorandum in Support of its Motion to Dismiss was accomplished pursuant to ECF as to Filing Users and in compliance with L.R. 5.5 as to any party who is not a Filing User or represented by a Filing User.

**/s/ Meredith Jenkins Laval**

Meredith Jenkins Laval