IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE MITCHELL and MICHAEL FREIDMAN, derivatively on behalf of nominal defendant BROADWIND ENERGY, INC., | ) ) ) ) | |
| Plaintiffs, | ) | No. 11 C 1059 |
| v. | ) ) | Judge Robert W. Gettleman |
| DAVID P. REILAND, J. CAMERON DRECOLL, JAMES M. LINDSTROM, CHARLES H. BEYNON, WILLIAM T. FEJES, JR., TERENCE P. FOX, TONTINE CAPITAL PARTNERS, LP, TONTINE CAPITAL OVERSEAS MASTER FUND, LP, TONTINE PARTNERS, LP, TONTINE OVERSEAS FUND, LTD, and TONTINE 25 OVERSEAS MASTER FUND, LP, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Bonnie Mitchell and Michael Freidman, derivatively on behalf of nominal

defendant Broadwind Energy, Inc. ("Broadwind"), have brought a five count consolidated

shareholder derivative action against: Broadwind, defendants Tontine Capital Partners, LP,

Tontine Capital Overseas Master Fund, LP, Tontine Partners LP, Tontine Overseas Fund, Ltd.

and Tontine 25 Overseas Master Fund, LP (collectively as "Tontine"); David P. Reiland; J.

Cameron Drecoll; William Fejes; Terence Fox; James M. Lindstrom; Charles H. Beynon (the

"individual defendants"). Count I is a claim against the individual defendants for breach of

fiduciary duties of loyalty and good faith. Count II is brought against the individual defendants

for waste of corporate assets. Count III is against Drecoll, Beynon, Fejes, Fox and Lindstrom for

breach of their duties of loyalty of good faith for selling stock based on knowledge of material

non-public information. Count IV is brought against Tontine for aiding and abetting breach of fiduciary duties, and Count V is brought against Tontine and Drecoll alleging unjust enrichment.

Pending before the court are four separate motions to dismiss: (1) Broadwind (joined by all defendants) has moved to dismiss arguing that plaintiffs have failed to make a demand on the board of directors to bring a suit on Broadwind's behalf and failed to plead specific facts demonstrating that such a demand would be futile; (2) calling themselves the "outside directors,." Reiland, Lindstrom, Beynon, Fejes and Fox have moved to dismiss Counts I through III for failure to state a claim (Counts I and II) and failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b) (Count III); (3) Tontine has moved to dismiss Counts IV and V for failing to state a claim; and (4) Drecoll has moved to dismiss the complaint in its entirety for failing to plead that a demand on the board to bring the claims would have been futile, and failure to state a claim. For the reasons that follow, all motions are granted and the complaint is dismissed.

## BACKGROUND

Broadwind is a Delaware corporation with its principal place of business in Naperville, Illinois. Broadwind manufactures wind energy products such as structural towers and gearing systems for wind turbines and provides technical, engineering and logistics management services to the United States wind energy industry. Its customers include wind turbine manufacturers and wind farm developers and operators.

Broadwind was first incorporated as Blackfoot Enterprises, Inc. in Nevada in 1996. After a merger in 2005, it became Tower Tech Holdings, Inc. In 2008 the company was renamed as

Broadwind and reincorporated in Delaware. In 2007 and 2008 the company acquired several subsidiaries to expand its operations.

Tontine began investing in Broadwind in 2007. By early 2008 it owned approximately 47.7% of the company's outstanding common stock. Under a March 2007 registration rights agreement between Broadwind and Tontine, Tontine had the contractual right to demand that the company register Tontine's shares and to participate in a registration and offering of the company's shares. Tontine also had the right to appoint three nominees to Broadwind's board of directors as long as it held more than 20% of the company's common stock.

Reiland has served as a director of Broadwind since April 16, 2008, and as chairman of the board since May 17, 2010. He has been chairman and a member of the Finance and Executive committees and is a member of the Audit and Governance/Nominating committees of the Board.

Beynon has served as a director since October 24, 2007. He has also served as chairman and member of the Audit Committee and a member of the Compensation Committee. Beynon was nominated to the board by Tontine pursuant to the registration rights agreement.

Fejes has served as a director since March 19, 2009. He has also served as chairman and member of the Governance/Nominating Committee and as a member of the Audit and Compensation Committees. Fejes was nominated to the board by Tontine.

Fox has been a member of the board since February 2006. He is a "founding stockholder" and has served as chairman and member of the Compensation Committee and member of the Governance/Nominating Committee. Under a 2007 proxy agreement, Fox appointed Tontine as proxy for all shares of the company over which Fox had voting control.

Drecoll served as chief executive officer ("CEO") and as a director from October 19, 2007 until December 1, 2010. He is currently a consultant to the company. Like Tontine, Drecoll had a registration rights agreement giving him the contractual right to demand that Broadwind register its shares and to participate in an underwritten offering.

Lindstrom was a director from October 21, 2007 until May 17, 2010. Prior to his resignation he served as chairman of the board, chairman of the Compensation and Executive Committees and member of the Governance/Nominating Committee. Lindstrom was employed by Tontine Associates, LLC, an affiliate of Tontine, and was nominated to the board by Tontine under the 2007 Registration Agreement.

On January 15, 2010, Broadwind filed a prospectus explaining that it was conducting a secondary offering (the "Offering") of common stock to raise capital to repay outstanding debt and to use for general corporate purposes. The prospectus disclosed that the company was in dire need of capital to service its debt and remain in compliance with its loan covenants. Under the terms of the Offering, Broadwind offered 10,000,000 shares, Tontine offered 6,125,000 shares and Drecoll offered 1,125,00 shares. The Offering was structured such that all the shares offered by the company had to be sold before any of the Drecoll shares could be sold and before 1,125,000 of Tontine's shares could be offered. Drecoll's shares could not be offered until all of the company's shares and 5,000,000 of Tontine's shares had been sold.

The Offering was completed on January 21, 2010. Broadwind's shares sold for $54,625,000 which, after expenses, resulted in net proceeds to the company of approximately $53.9 million. Tontine received gross proceeds of $33,457,812.50 and Drecoll received gross proceeds of $6,145,312.50.

On March 12, 2010, Broadwind filed a Form 10-K for the year ending December 31, 2009, that indicated that the company had completed its annual goodwill impairment analysis in March and had taken a goodwill intangible impairment charge of $82.2 million, giving the company a net loss of $92.6 million for the fourth quarter of 2009, and a net loss of $110.1 million for the year.

At the time of the offering, the board of directors was composed of Reiland, Beynon, Fejes, Fox, Lindstrom and Drecoll, who was also the CEO (the "offering board"). Of those, Beynon, Fejes and Lindstrom were nominated by Tontine, and Fox had appointed Tontine as his proxy for voting his shares. In May 2010, Tontine disclaimed its right to nominate directors to the board and announced that the directors it had previously appointed were no longer its designees.

Plaintiff Mitchell filed the instant action on February 15, 2011. Plaintiffs Freidman and Hopf filed similar suits shortly thereafter. At the time Mitchell's original complaint was filed the board of directors was composed of Reiland, Beynon, Fejes, Fox and Peter C. Dupree (the "demand board"). The consolidated complaint essentially alleges that the Offering was a "self-dealing" transaction designed to benefit Tontine and Drecoll and was contrary to Broadwind's interests. According to the complaint, the individual defendants delayed the announcement of the goodwill impairment loss until after the Offering so that Tontine and Drecoll could sell their shares at an artificially high price.

## **DISCUSSION**

As an initial matter, Broadwind has moved to dismiss the complaint in its entirety because plaintiffs made no demand on the board of directors to bring the suit and have failed to

plead with particularity that such demand would have been futile. That motion has been joined by all the other defendants.

Because derivative shareholders suits assert rights belonging to the corporation, shareholders must ordinarily make a demand on the board of directors to take action before initiating a suit on the corporation's behalf. Oakland County Employees Retirement Syst. v. Massaro, 772 F. Supp.2d 973, 976 (N.D. Ill. 2011) (citing Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96-97 (1991). Fed. R. Civ. P. 23.1 requires derivative plaintiffs to plead with particularity the efforts they have made to obtain the desired action from the board, or the reasons such efforts would be futile. Id. The purpose of a Rule 23.1 motion is "to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." Oakland County Employees Retirement Syst., 772 F. Supp.2d at 976 (quoting In re: Veeco Instruments, Inc. Securities Litigation, 434 F. Supp.2d 267, 273 (S.D. N.Y. 2006)). The substantive rules to determine if a plaintiff has satisfied Rule 23.1 are matter of state law. Id.

The test for demand futility under Delaware law[1] when director liability is premised on improper action by the board (as opposed to "considered inaction") is articulated in Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984):

> Our view is that in determining demand futility the [court] in a proper exercise of its discretion must decide whether under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.

---

[1]The parties agree Delaware law applies because Broadwind is a Delaware corporation.

Under <u>Aronson</u>, demand futility is a two step inquiry. First, the court must determine the disinterestedness of the directors. Second, the court must examine the substantive nature of the challenged transaction and the board's approval thereof. As to the first inquiry, the court reviews the factual allegations to decide whether they raise a reasonable doubt, as a threshold matter, that the protections of the business judgment rule[2] are available to the board. If the challenged action is an "interested" director transaction such that the business judgment rule is inapplicable to the board majority approving the transaction, the inquiry ceases and demand futility has been established. <u>Id</u>. at 814-15.

As to the second inquiry, the court cannot assume that the transaction is a wrong to the corporation requiring corrective steps by the board. Instead, the alleged wrong is substantively reviewed against the factual background alleged in the complaint. <u>Id</u>. at 814.

Plaintiffs admit that they made no demand on the board to bring the action, arguing instead the demand was: (a) unnecessary because the "entire fairness standard" applies; and (b) demand would have been futile given the current board members' interest in the outcome. Plaintiffs are wrong on both theories.

The entire fairness standard is a two-pronged inquiry into whether the transaction in question was the result of a fair process and at a fair price. It is a standard of judicial review used by the court when evaluating the fairness of a particular transaction. Although courts differ on when the standard applies, it is generally employed to evaluate transactions when directors

---

[2]The business judgment rule is an acknowledgment of the managerial perogatives of Delaware directors. "It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." <u>Aronson</u>, 473 A.2d at 812.

are "on both sides of a transaction." Bender v. Schwartz, 172 M.D. App. 648, 670 (M.D. App.

2007) (applying Delaware law) (quoting Weinberger v. UOP, Inc., 457 A.2d 701, 710 (Del.

1983). It applies at the outset ("ab initio") in certain special circumstances only, such as a

squeeze out merger or a merger between two companies under the control of a controlling

shareholder, neither of which is applicable here. Orman v. Cullman, 794 A.2d 5, 20 n.36 (Del.

2002).

Plaintiff has presented no case holding that the entire fairness standard applies to the

determination of whether a demand is required, and the court has found none. The standard is

not used, however, to evaluate whether a board has wrongfully refused a shareholder demand

that the corporation bring suit. The business judgment rule applies in that situation. Bender, 172

M.D. App. at 665-66. Therefore, the court rejects plaintiffs' argument that the entire fairness

standard excuses their lack of demand.

Plaintiffs next argue that demand is excused under the first part of the Aronson test

because there is a reasonable doubt regarding the disinterestedness or independence of a majority

of the demand board. To establish demand futility under this prong, the complaint must allege

particularized facts raising a reasonable doubt that the protections of the business judgment rule

are available to the board. Aronson, 473 A.2d at 814. As noted, the demand board consisted of

Reiland, Beynon, Fejes, Fox and Peter Dupree. Plaintiffs argue that the complaint sets forth

allegations sufficient to raise a doubt about each of those directors' disinterestedness. The court

disagrees.

First, plaintiffs argue that the complaint alleges that Beynon, Fejes and Fox were not

disinterested because they "were affiliated with Tontine and that each made decisions in

Tontine's interest to the company's detriment in connection with the offering."  According to plaintiffs, it follows that those same directors cannot disinterestedly and independently consider a demand to institute the litigation.  Relying on a statement in In re Dow Chemical Co. Derivative Litig., 2010 WL 66769 at *7 n.36 (Del. 2010), that "a majority or control shareholder may influence board members even if the controller is not on the board," plaintiffs argue that Tontine actually controlled the Offering transaction.

There are a number of problems with this argument.  First, the only connection the complaint alleges Beynon and Fejes have with Tontine is that Tontine nominated them to the board.  The only connection Fox had is that he allowed Tontine to vote his stock.  There are no other allegations that once nominated Tontine had the ability to or in fact did exert any control over any of the directors.  "It is not enough to charge that a director was nominated by or elected at the behest of those controlling a corporate election.  That is the usual way a person becomes a corporate director.  It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence."  Aronson, 473 A.2d at 816.  To establish demand futility based on domination or control of one or more directors, plaintiff must "allege particularized facts manifesting a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or person) doing the controlling."  Id.

In the instant case, the complaint contains no such allegation.  Indeed, the complaint merely alleges that Beynon, Fejes and Fox were "affiliated with Tontine, the company's controlling shareholder at the time of the offering."  Even if an allegation of "affiliated with" was enough to establish Tontine's control over its nominee directors, contrary to the holding in

Aronson, Tontine owned only 47.7% of the company. Of course, 47.7% is not itself a majority, and does not by itself establish Tontine as a controlling shareholder. See e.g., Citron v. Fairchild Camera and Instrument Corp., 569 A.2d 53, 70 (De. 1989) ("a shareholder who owns less than 50% of a corporation's outstanding stock does not, without more, become a controlling shareholder of that corporation.").

Moreover, by the time the lawsuit was filed, Tontine had disclaimed any affiliation with its nominated directors, and at the time the consolidated complaint was filed Tontine owned only 18.7% of the outstanding stock. Therefore, the court concludes that the complaint's general allegations that Beynon, Fejes and Fox were affiliated with Tontine are insufficient to raise a reasonable doubt as to whether the protections of the business judgment rule are available to the board.

Next, plaintiffs argue that demand was futile because Beynon, Fejes, Fox and Reiland face a substantial likelihood of liability for approving the Offering in general and the allocation of costs in particular. Again, the court disagrees.

The complaint describes the nature of the action as alleging that the individual defendants and Tontine caused and allowed the company to undertake the Offering against the company's best interests, resulting in Tontine and Drecoll unfairly and unjustly receiving millions of dollars in illicit proceeds. Specifically, paragraph two of the complaint alleges that the Offering was conducted "solely to benefit the controlling shareholder [Tontine] and former CEO [Drecoll], without insuring that the transaction was entirely fair to the company . . .." Plaintiffs' theory is that defendants timed the Offering to occur prior to the determination of the goodwill impairment charge knowing that once the charge was announced the price of Broadwind stock

would drop. According to the complaint, by timing the Offering prior to the announcement of the loss, the board acted to help Tontine and Drecoll sell at an inflated price to the detriment of the company.

As all defendants have pointed out, however, any benefit received by Drecoll and Tontine as a result of the timing was also received by the company, which sold 10 million shares at the same price, receiving a net of almost $54 million at a time when it was unquestionably in dire need of funds. Faced with this argument by defendants, plaintiffs have pulled back, indicating that they are not challenging Broadwind's sale of shares[3]. "Plaintiff[s are] not challenging the fairness of the offering itself, but instead [are] challenging the terms of the offering apportioning costs and expenses between the Company, Tontine and Drecoll."

This admission is telling. Because the company shared in any possible benefit based on the timing, plaintiffs admit that their only real claim is to their allegation that the directors improperly required the company to pay Tontine's and Drecoll's share of the costs and expenses of the Offering.

According to plaintiffs, the company paid $725,000 in costs and expenses for the offering in addition to the underwriting discount. Of that amount, $305,000 was allegedly attributed to Drecoll and Tontine. But both Drecoll and Tontine had registration rights agreements with Broadwind (that were negotiated in 2007, prior to Drecoll and Tontine becoming affiliated with Broadwind and prior to Beynon, Fejes and Reiland joining the board) that required Broadwind to

---

[3]Any such complaint could be brought only by shareholders who purchased shares at or after the Offering at allegedly inflated prices, rather than plaintiffs in the instant case derivatively on behalf of Broadwind. As noted in footnote 4 below, such an action is pending in this district before Judge Zagel.

take all reasonable actions to facilitate the registration and disposition of Drecoll's and Tontine's securities. The Tontine agreement provided that "all expenses incident to the Company's performance of or compliance with this Agreement . . . will be borne by the Company." Under that agreement the company was expressly obligated to pay, among other things: (1) the registration and filing fees in connection with the Offering; (2) the costs associated with complying with federal or state securities laws; (3) printing, messenger and delivery expenses; (4) the fees and disbursements of counsel, independent auditors, and other professionals retained by the company; and (5) fees and expenses of counsel retained by Tontine in connection with the Offering. Drecoll's agreement, made in connection with Broadwind's acquisition of Brad Foote Gear Works, Inc. contains similar language:

> All expenses incident to the company's performance of or compliance with this Agreement, including, without limitation, all registration and filing fees payable by the company, fees and expense of compliance by the company with securities or blue sky laws, printing expenses of the company, messenger and delivery expenses of the company, and fees and disbursements of counsel of the company and all independent certified public accountants of the company, and other persons retained by the company will be borne by the company . . ..

Thus, aside from underwriter discounts which both Drecoll and Tontine paid, the contracts required the company to pay all other expenses. The complaint broadly alleges that the company paid expenses attributable to Drecoll and Tontine that it was not required to pay, but fails to identify with particularity any of those expenses. In particular, it fails to identify any expenses paid by the company that were not required to be borne by the company pursuant to the registration rights agreements.

In any event, because the company received almost $54 million, any argument by plaintiffs that the individual defendants faced a substantial likelihood of liability for corporate

waste based on a payment of $305,000 in expenses in untenable.  Under Delaware law, valid claims of waste "are confined to unconscionable cases where directors irrationally squander or give away corporate assets."  Brehm v. Eisner, 746 A.2d 244, 263 (Del. 2000).  Directors are liable for waste of corporate assets only in the extraordinary circumstance where "what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth what the corporation has paid."  Grobow v. Perot, 539 A.2d 180, 189 (Del. 1998).[4]  Broadwind's receipt of $54 million in much needed capital from the Offering cannot under any circumstances be considered "inadequate."

Accordingly, the court concludes that the complaint fails to allege any valid reason for failing to make demand on the board prior to filing suit.  All defendants' motions to dismiss are granted.

### CONCLUSION

For the reasons stated above, defendants' motions to dismiss are granted.


**ENTER:**        **May 15, 2012**

_Robert W. Gettleman_

**Robert W. Gettleman**
**United States District Judge**

---

[4]Although not relied on by the court in its analysis of defendants' motions, the court does note that Tontine and all individual defendants except Drecoll have been dismissed with prejudice by Judge Zagel from a shareholder class action alleging violations of the Securities Exchange Act and Rule 10b-5 based on the same conduct as alleged in the instant action. Brasher v. Broadwind Energy, Inc., 2012 WL 1357699 (N.D. Ill. April 19, 2012).

13